### GLANDZIS et al. v. CALLINICOS.

### No. 125.

Circuit Court of Appeals, Second Circuit.

Jan. 26, 1944.

112

Melton, Lebovici & Arkin, of New York City (Joseph Kottler, of New York City, of counsel), for libellants-appellants.

Frederick H. Cunningham, of New York City, for respondent-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This is a libel brought by fourteen officers and enlisted seamen of the Greek vessel Eleni against her owner, for wages and for a penalty, under sections 3 and 4 of the Seamen's Act of March 4, 1915, 38 Stat. 1164, 46 U.S.C.A. §§ 596 and 597. The District Court found that there were no wages due and remaining unpaid, and dismissed the libel. 48 F.Supp. 732.

Briefly stated, the relevant parts of the act provide that when a vessel touches at an American port the personnel are entitled upon demand made to the master to receive payment of one-half the amount of their wages then earned and unpaid, and if the master neglects or refuses to comply with such demand the full amount becomes immediately payable and the seamen are discharged from their contract of service. A penalty is likewise provided, whereby the men become entitled to a sum equal to two days' pay for each day that the amounts due them are wrongfully withheld "without sufficient cause." Contrary stipulations in

any contract are declared to be of no binding force, and these provisions are made applicable to American and foreign seamen alike whether of the crew of vessels of American or foreign registry.

It was proved at the trial that by Greek custom the personnel of vessels of that nationality do not sign articles upon beginning their service. Compensation and the other incidents of employment are regulated by law. In the present case the basic wages of the various libellants were so fixed at sums ranging from 6 pounds to 16 pounds monthly. This scale was in force on May 23, 1941, when all but one of the libellants shipped aboard the Eleni, and on June 23, 1941, when the remaining man was engaged.

At these times there was also in effect a governmental order described as Decree No. 11114, which provided, among other things, for a general war bonus of 150% of the basic wages beginning March 15, 1941. On May 28 this was modified by another decree which increased the general bonus to 200%. of the basic wages. On August 5, 1941, representatives of the shipowners and of various seamen's unions entered into a written agreement which provided for payment of the wages prescribed by law and of the 200% bonus. The substance of this agreement was embodied in a so-called protocol issued by the Greek government in exile in London on August 26, 1941. This document recited the government's approval of the agreement.

The present suit arose out of a dispute over the proper construction of a "shipowners' supplemental statement" which accompanies the agreement. It was signed by the same representatives of the owners, in London, and on the same day as was the agreement. In the typed copy of both documents in the Greek language, as placed in evidence at the trial, the statement appears on a separate sheet; whether as originally executed it was thus separated does not appear. It is not signed by the representatives of the seamen's unions, but was signed by one Courbellis, who was identified as the port captain and the accredited representative of the Greek government. The statement, as rendered in the English translation used at the trial, recites that the shipowners "state that they agree to deposit with the Greek Government" a special bonus of 100% of the basic wage of each unlicensed man and 75% in the case of each officer, which sums were to be deposited by the master in banks designated by the unions and kept in separate accounts for the benefit of the respective men as forced savings. The protocol of August 26, setting forth the terms of the agreement, contained a recital of this statement also.

The voyage of the Eleni took her from Liverpool through the Mediterranean Sea, touching at various ports there and on the coast of Africa, and eventually to New York City, where the vessel arrived on October 20, 1941. At that port these libellants were paid in full the amount of their basic wages and the 200% general bonus called for in the agreement but the master declined to pay them the extra bonus provided for in the supplementary statement or to deposit it to their credit. There is testimony that he said he would not pay this money to the officers and men unless they stayed with the ship. He also wrote out a statement giving as the reason for his refusal the fact that "they were engaged on the ship prior to the 15th of July, 1941."

At this time the libellants insisted upon leaving the employ of the ship, though the term of their service, as designated in the agreement of August 5, had not expired, and the master did then give them their discharge.

They claim that the special bonus provided for in the supplemental statement, in addition to the 200% general bonus granted by the agreement, constituted a part of their wages and so falls within the provision of the Seamen's Act which guarantees their right to receive payment of half their unpaid wages upon demand made when the ship is in an American port. The District Judge held otherwise, finding that the supplemental statement did not form a part of the libellants' contract of employment and that its provisions were not within the contemplation of the parties when the men were engaged for service. His view was that the agreement embodied a full expression of the parties' intentions and that the benefits conferred by the supplemental statement amounted only to a gratuity.

We think the judge erred in his conclusion. In Lakos v. Saliaris, 4 Cir., 116 F.2d 440, it was held that a sum of money designated in the seamen's contract as a "war bonus" and granted in addition to a basic wage, was in fact and in law a part of the seamen's wages. As the court said, wages are the compensation paid by an employer for services rendered to him by

others, and the essential character of such compensation is not altered by giving to a part of it the name of "war bonus." That is equally true in the present case.

The respondent seeks to distinguish Lakos v. Saliaris on the ground that there the bonus was included in the employment contract, while in the instant case the special bonus was not provided for until after the libellants had entered upon their service and it had therefore not been contemplated by the parties. But it is plain that this purported distinction is unsound, for the special bonus was intended to compensate the men for services rendered to the vessel quite as much as were the basic wage and the general bonus. It was simply a raise which became effective during their period of employment and was still in effect at the time of their discharge.

■ It is no objection to the libellants' maintaining this suit under the Seamen's Act that the shipowners in their supplemental statement have not undertaken to pay the bonus directly to the libellants. Under our public policy, as expressed in § 4 of the Seamen's Act, 46 U.S.C.A. § 597, it is enough that the money involved is wages; any contractual provision making it payable in a way other than as the statute requires is void, and consequently it is immaterial whether the money was deposited in a bank in England or not.

■■ The respondent also contends that the libellants broke their contract by leaving the service of the ship before their term of six months had expired, and that they coerced the master unlawfully by threatening to desert if he did not accede to their demands. Both grounds are relied on to defeat the libellants' rights under the supplemental statement and protocol. As proof of such unlawful coercion, reliance is placed upon a "decision" of the mercantile marine service of the Royal Greek Embassy that by virtue of their "unlawful forcing actions" the libellants have disentitled themselves to the special bonus. But in the absence of any finding of unlawful coercion, and there was none, this ex parte conclusion cannot alter the effect of the discharge. As to the allegation of desertion, there is clear evidence that the master himself wrote out discharges for the men. More than this, we think that when he refused to pay over the amount of the bonuses which were due the men were released from their contracts under the clear wording of § 4 of the Act, 46 U.S.C.A. § 597.

■ Lastly, it is contended by the respondent that the libellants violated the conditions of the agreement when they failed to submit their grievance to arbitration, as was there provided. But once again we think that such requirement was in derogation of the libellants' absolute right to immediate payment, as guaranteed by our statute, and as such is void. Our conclusion on this branch of the case, then, is that the special bonus was payable as wages and no defense to the libellants' right to payment has been made out.

The remaining question is whether the master's refusal to pay these wages upon demand was "without sufficient cause," as the term is used in § 3 of the Seamen's Act, 46 U.S.C.A. § 596. If so, the libellants are therefore entitled to recover as a penalty for such refusal a sum equal to two days' wages for each day that the payment demanded was wrongfully withheld, but otherwise not. Their evidence on this point is that the master assigned as reasons for his refusal a desire to keep the men on board, and the novel claim—advanced by no one but himself—that a provision in the supplemental statement making it applicable only to seamen engaged on July 15, 1941, should be interpreted to mean only those already engaged by that day. We find no occasion for going into the questions of whether the first reason given was arbitrary and unjustified or whether the second reason was a proper interpretation of the provision, as we think the issue of liability under the penal section is foreclosed by other considerations. The master was certainly faced with a perplexing problem and had to decide questions on which reasonable men might well disagree. What has happened confirms that fact if it be thought that any confirmation is required. The mercantile marine service of the Royal Greek Embassy gave a written opinion that for the reasons there stated the master was relieved from liability to pay the amount of the special bonus; and the District Judge before whom this case was tried was of opinion that, independently of whether there were valid defenses to the suit, the libellants had not shown themselves entitled to the payment of money coming within the category of wages.

■■ Certainly a very real doubt as to the validity of the libellants' claim to be

paid any part of the special bonus as wages was justified, and the master had a right to act accordingly. That was sufficient to prevent his refusal from being "without sufficient cause." It is not every refusal which grounds the penalty. It is arbitrary, unwarranted, and unjust conduct which is sought to be penalized. The Sonderborg, 4 Cir., 47 F.2d 723, 728, certiorari denied 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527. See The Thomas Tracy, 2 Cir., 24 F.2d 372, 374, certiorari denied 277 U.S. 595, 48 S.Ct. 530, 72 L.Ed. 1005, where this court said that "although it may ultimately be determined that there is no actual legal defense to the claim for wages, nevertheless, if the owner or master had sufficient cause to withhold the wages, when demanded, beyond the time mentioned in the statute, it relieves the vessel of the imposition of the penalties."

Decree reversed, and cause remanded.