## BUTLER v. UNITED STATES WAR SHIPPING ADMINISTRATION.

No. 93 of 1944.

District Court, E. D. Pennsylvania.

July 2, 1946.

Freedman, Landy & Lorry and Charles Lakatos, all of Philadelphia, Pa., for petitioner.

Krusen, Evans & Shaw and Thomas E. Byrne, Jr., all of Philadelphia, Pa., for respondent.

WELSH, District Judge.

This is a suit in admiralty brought by Harry C. Butler, Chief Steward aboard the S. S. Olambala wherein wages deducted and withheld at the termination of the voyage because of an alleged shortage in the slop chest, wages for overtime, wages for four days subsequent to the termination of the voyage and double wages under R.S. § 4529, 46 U.S.C.A. § 596, are claimed. The cause was heard before the Court without a jury and the findings of fact, discussion and conclusions of law follow in order:

Findings of Fact.

1. Libellant joined the S. S. "Olambala" as Chief Steward on October 8, 1943, at the basic daily rate of $4.99 or $149.50 per month, plus bonuses, overtime and found.

2. The vessel which was owned by the respondents and operated on their behalf by Norton-Lilly Management Corporation under a general agency agreement, was in command of Captain J. J. Folmer.

3. Captain Folmer was charged with responsibility for the "slop chest" and for any shortages in the "slop chest" account.

4. At the time Libellant joined the vessel, voyage No. 6 was already in progress, having commenced on September 23, 1943.

5. Libellant had been preceded as Chief Steward by one Foo Chiang, who had joined the vessel on September 24, 1943, and who had signed off the articles on October 9, 1943.

6. At the commencement of voyage No. 6, respondents had taken an inventory of the slop chest, and had entrusted the Master with custody of the slop chest. The Master, in turn, had delegated the job of making sales from the slop chest and keeping the slop chest account to Foo Chiang, who could neither read nor write English very well.

7. When Libellant joined the vessel he obtained the keys to the slop chest from the second cook and baker and assumed the duties of the former Chief Steward. No inventory of the slop chest was taken by respondents at the time Foo Chiang signed off the articles or at the time Libellant joined her. Libellant did not at the time he joined the "Olambala" or at any time subsequent to his joining agree to assume responsibility for any shortages in the slop chest.

8. The Olambala proceeded on its voyage and arrived in Philadelphia on November 22, 1943. During the voyage, Libellant earned 132 hours overtime at one dollar per hour.

9. Shortly after the Olambala arrived in Philadelphia, an inventory of the slop chest was taken by the respondents.

10. On November 27, 1943, Libellant signed off the articles, but the Master refused to pay him his earned wages until it was determined whether or not there was a shortage in the slop chest account.

11. At the time Libellant signed off the articles the Master did not know whether or not there was any such shortage, but knew that even if there was a shortage it must have occurred during Libellant's stewardship of the slop chest or that of his predecessor.

12. At the Master's request, Libellant remained on duty on the vessel for four days beyond the termination of the articles, from November 27 to November 30, 1943, inclusive, until the steward's department was replaced by a new crew, and during this period earned $29.96.

13. When Libellant left the vessel on November 30th he was instructed by the Master to proceed to the offices of Norton-Lilly Management Corporation in New York to obtain his pay.

14. The Libellant went to the offices of Norton-Lilly Management Corporation and was at first told that the slop chest account was some $70 over and was instructed to return at a later date.

15. In the meantime, Captain Folmer, having been advised by Norton-Lilly of an alleged shortage in the slop chest account, instructed Norton-Lilly to deduct the shortage from Libellant's pay.

16. When Libellant returned to the offices of Norton-Lilly on December 3rd, he was told that there was a shortage of $97.68 in the slop chest account, and when he was paid off the same day this amount was deducted and withheld from his earned wages.

17. The sum of $97.68 deducted and withheld from Libellant's earned wages was withheld upon the instructions and for the account of Captain J. J. Folmer, and not for any indebtedness owed by Libellant to the respondents.

18. At the time Libellant was paid and the sum of $97.68 withheld from Libellant's earned wages, Norton-Lilly Management Corporation, agent for respondents, did not know which shortages, if any there were in the slop chest account, occurred during Libellant's stewardship of the slop chest or during his predecessor's stewardship.

19. Norton-Lilly Management Corporation computed the alleged shortage of $97.-68 in the slop chest account by taking the difference between the inventory at the beginning of the voyage, which was taken some two weeks before Libellant joined the vessel and when the slop chest was in charge of Foo Chiang, the former Chief Steward, and the inventory at the end of the voyage, making allowances for purchases by the slop chest and sales therefrom during the voyage.

20. No inventory of any kind was taken by the respondents during the period between these two inventories.

21. Respondents have never paid Libellant the sum of $97.68 deducted from his earned wages, although the same was demanded by Libellant.

22. At the time Libellant was paid off on December 3, 1943, respondents refused to pay him $74.50 for 74½ hours overtime earned by Libellant during the voyage, and likewise refused to pay him $29.96 earned by Libellant between November 27 and November 30, 1943. The said sums have never been paid to Libellant.

23. The Master refused to pay Libellant his earned wages within four days after the termination of the articles.

24. The sum of $97.68 was deducted from Libellant's earned wages by the respondents.

## Discussion.

It is conceded that the amount of $97.68 deducted and withheld by the respondent for an alleged shortage in the slop chest account constituted wages earned by the Libellant and further, that the respondents deducted this amount due the Libellant on instructions received from the Master after they, the respondents, had informed the Master that there was a shortage in the slop chest account. However, there is a conflict in the testimony as to whether or not the Libellant consented to the withholding of part of his earned wages and since we give credence to the Libellant's testimony to the effect that he did not consent to the withholding of his wages, the respondents had imposed upon them the burden of proving that their action or conduct in this respect was legally justified. The respondents claim to have met this burden by proving that the inventory check made by them at the termination of the voyage revealed that there was a shortage in the slop chest account. This claim is fatal for two obvious reasons. In the first instance, the respondents determined the shortage by comparing the inventory which was taken on September 23, 1943, with the inventory which was taken at the end of the voyage or when the Libellant's stewardship was terminated. Between these two dates there were two persons aboard the S. S. "Olambala" in the capacity of Chief Steward, the Libellant and his predecessor, Foo Chiang. The latter acted as Chief Steward from September 23, 1943, to October 9, 1943, and the Libellant assumed the duties of Chief Steward on October 8, 1943, and relinquished the same on November 30, 1943. From these facts it is obvious that the shortage cannot be attributed to either Foo Chiang or to the Libellant because it is impossible to determine whether the shortage occurred during the Libellant's tenure as Chief Steward or that of his predeces-

sor. Secondly, even though the shortage did occur during the stewardship of the Libellant the respondents had no right to deduct or withhold the amount of the shortage because there was no agreement between the Libellant and the respondents regarding possible shortages in the slop chest account. On the other hand, the Master was responsible to the respondents for any shortages in the said slop chest account and in the event of a shortage the respondents had the right to settle with the Master but had no right in any event to assume the role of a collecting agency by withholding wages earned by the Libellant to settle an alleged debt owed by the Libellant to the Master. As the respondents have not proved that they had the right to withhold $97.68 the claim for that amount is sustained.

■ The evidence with respect to the claims for overtime wages and four days' wages from November 27th to November 30th, 1943, inclusive, is contradictory to say the least and therefore depends to a large extent on the credibility of witnesses. As we choose to believe the testimony of the Libellant it follows that these claims in the amount of $74.50 and $29.96 respectively are also sustained.

■ It is the contention of the Libellant that he is entitled to double wages under Rev.Stat. § 4529, 46 U.S.C.A. § 596. Rev.Stat. § 4529 provides inter alia: "The Master or owner of any vessel * * * making foreign voyages * * * shall pay to every seaman his wages * * * within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sums shall be recoverable as wages in any claim made before the court * * *." Respondents admit that Libellant was not paid within the period prescribed by Rev.Stat. § 4529, but argue, and we think rightly so, (1) there was sufficient cause for the failure or refusal to pay Libellant's wages, and (2) the present suit is against the United States and it has not waived its sovereign immunity with respect to being sued for double wages under R.S. § 4529.

Congress in enacting R.S. § 4529 did not intend the imposition of the double wage penalty in each and every case where there is a failure or refusal to pay seaman's wages. It is clear from the express language of the Section that the imposition of the double wage penalty is applicable only where there is a refusal or failure to pay wages without sufficient cause. The words "without sufficient cause" refer to conduct that is unwarranted, arbitrary and unjust. See The Easterner, 4 Cir., 47 F.2d 605; Glandzis v. Callinicos, 2 Cir., 140 F.2d 111, 115. There is no such conduct in the instant case because the facts and circumstances of the particular case disclose that the Master acted with sufficient cause. The Master of the Olambala, after having been advised that the inventory disclosed a shortage in the slop chest account, instructed the Agent of the respondents to deduct from the Libellant's wages the amount of the deficiency. Apparently, the basis for such instructions was the cigarette incident in Santa Cruz where the Master discovered the Libellant in the process of turning over a case of cigarettes to an undisclosed person or persons. At this point, the Master's suspicions toward the Libellant must have been aroused and unquestionably persisted until the offices of Norton-Lilly Management Corporation advised him of the shortage in the slop chest account. It was only natural for him to conclude that the Libellant was responsible for the shortage.

Sufficient cause having been found, the fact that the wages deducted and withheld for an alleged shortage in the slop chest account was not legally justified does not avail the Libellant. In Glandzis et al. v. Callinicos, supra, the Court said: "Although it may ultimately be determined

that there is no actual legal defense to the claim for wages, nevertheless, if the owner or master had sufficient cause to withhold the wages, when demanded, beyond the time mentioned in the statute, it relieves the vessel of the imposition of the penalties."

The purpose of R.S. § 4529 is to compensate seamen and to penalize masters and owners for failure to pay seamen their wages promptly. However, the opinion of this Court is that the essential purpose of § 4529 is to penalize and apparently Libellant concurs in that opinion because despite the fact that the amount involved in this litigation is several hundred dollars exclusive of the double wages claimed, the Libellant is requesting this Court to award him an amount approximating $12,000 in the nature of double wages under § 4529. "The United States can be held liable for penalty only when the statute expressly so provides. * * * Neither 46 U.S.C.A. § 596 [Rev.Stat. § 4529] nor Public Law No. 17, 78th Congress, H.R. 133, 50 U.S.C.A.Appendix, § 1291, which enables a seaman to sue under the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752 provide for the penalty against the United States." Dasher v. United States et al., D.C., 59 F.Supp. 742, 743.

### Conclusions of Law.

1. To recover double wages for failure to pay a seaman his earned wages under Rev.Stat. § 4529, 46 U.S.C.A. § 596 it must be shown that the master or owner did so without sufficient cause.

2. The words "without sufficient cause" refer to conduct that is unwarranted, arbitrary and unjust.

3. Although it may ultimately be determined that there is no actual legal defense to the claim for wages, nevertheless if the owner or master had sufficient cause to withhold the wages when demanded, beyond the time mentioned in Rev.Stat. § 4529, supra, it relieves the vessel of the imposition of the penalties.

4. The essential purpose of Rev. Stat. § 4529, 46 U.S.C.A. § 596 is to penalize.

5. The United States can be held liable for penalty only when the Statute expressly so provides and Rev.Stat. § 4529, 46 U.S.C.A. § 596 does not provide for the penalty against the United States.

The Libel with the exception of the claim contained therein for double wages under Rev.Stat. § 4529 is hereby granted and the damages are fixed at $202.14, with interest and costs to be paid by the Respondents.

An order may be entered in conformity with this opinion.