## THE CITY OF MONTGOMERY.

(District Court, S. D. New York. December 15, 1913.)

1. SEAMEN (§ 6*) — CONTRACT OF EMPLOYMENT — CONSTRUCTION — TERM OF SERVICE.

Articles by which a seaman engaged for service on a steamship for "one or more trips" from New York to Savannah and return to New York or Boston, and such other coastwise ports or places as the master might direct, for a term not exceeding one calendar month, the port of discharge to be New York or Boston, as practically construed by the parties, *held* not to bind the seaman to serve more than one round trip.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 8–18; Dec. Dig. § 6.*]

2. SEAMEN (§ 33*)—WAGES—FAILURE TO PAY ON TERMINATION OF SERVICE—VALIDITY OF CONTRACT—CONSTRUCTION OF STATUTE.

The provisions of Rev. St. § 4529, as amended by Act Dec. 21, 1898, c. 28, § 4, 30 Stat. 756 (U. S. Comp. St. 1901, p. 3077), requiring the payment of seamen within two days after the termination of their term of service or on their discharge if before that time, under penalty of payment of wages during the time such payment is delayed, if "without sufficient cause," cannot be abrogated by contract between the parties, and a failure to pay within the time prescribed, in reliance on the terms of such a contract, is without sufficient cause and does not relieve the shipowner from such penalty to be computed to the time payment is made or tendered.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 218, 219; Dec. Dig. § 33.*]

In Admiralty. Suit by John Rueb against the steamship City of Montgomery; the Ocean Steamship Company of Savannah, claimant. Decree for libelant.

William F. Quigley, of New York City, for libelant.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers and Earle Farwell, both of New York City, of counsel), for claimant.

MAYER, District Judge. The suit is for seaman's wages and also to recover the statutory penalty of a dollar for each day of delayed payment.

Libelant Rueb had been a seaman on the City of Montgomery for three trips between New York and Savannah, Ga., prior to August 23, 1912. On that day he was paid off, and on August 24, 1912, he re-shipped, after having signed new shipping articles.

Two round trips were made by Rueb, and on arrival of the steamship at New York, on September 10, 1912, he notified the mate Olsen of his

intention to leave. The mate did not object to Rueb's departure, saying to him:

"You can get out right away, but you will not get your money before the end of the month."

While the answer of claimant contains a general denial of various allegations of the libel, the defense that libelant left the ship without the consent of claimant or master or officers of the ship is disposed of by the uncontradicted testimony just quoted.

The real defense of claimant is set forth in the following allegations of its separate defense:

"Fifth. That the claimant refused to pay the libelant for the work theretofore performed by him until the first arrival at New York, N. Y., or Boston, Mass., after one calendar month had elapsed from the date of said articles, as prescribed by said articles. That the said steamship City of Montgomery arrived at New York, N. Y., on or about the 30th day of September, 1912, which was the first arrival at either New York, N. Y., or Boston, Mass., after one calendar month had elapsed from the date of said articles. That on or about the 30th day of September, 1912, the seamen of said steamship City of Montgomery were paid their wages through the United States Shipping Commissioner at the port of New York, and that the wages of the libelant herein, under said articles, for the time he worked, were sent to the said Shipping Commissioner for the purpose of being paid the libelant, and the said Shipping Commissioner was then, and ever since has been, ready and willing to pay the same to the libelant. That the libelant refused to accept the same."

After the argument, a new theory was suggested by claimant which does not accord with the testimony nor with the answer as I read it.

[1] Now the contention is that Rueb's engagement was for a period of time not to exceed one month, irrespective of the number of trips. It becomes necessary, therefore, to examine the articles before considering the other interesting and important questions presented in this controversy. These articles, so far as relevant, are as follows:

"Articles of Agreement between Master and Seamen in the Merchant Service of the United States,

"Required by Act of Congress, Title LIII, Revised Statutes of the United States.

"Office of the U. S. Shipping Commissioner for the Port of [New York, Aug. 24, 1912].

"It is agreed between the master and seamen, or mariners, of the [S. S. City of Montgomery of Savannah, Ga.] of which [C. S. Burg] is at present master, or whoever shall go for master, now bound from the port of[1] [New York], to [Savannah, Ga., for one or more trips], and such other ports and places [coastwise] as the master may direct, and back to [New York or Boston, Mass.], a final port of discharge in the United States, for a term of time not exceeding [one (1) calendar month].[2]

"(Here follows the scale of provisions.)

"It is also agreed that the crew is to be paid off and discharged at either New York, N. Y., or Boston, Mass., on the first arrival at either of said ports, after one calendar month shall have elapsed from the date of these articles. Any member of the crew leaving the vessel without permission of the head of his department may be fined not more than two days' pay. * * *

"[1] Here the voyage is to be described, and the places named at which the ship is to touch; or, if that cannot be done, the general nature and probable length of the voyage is to be stated, and the port or country at which the voyage is to terminate.

"[2] If these words are not necessary they must be stricken out."

The articles are on a printed form, and in the above quotation the parts thereof in handwriting are indicated by brackets.

The physical form of the articles will be of some service in construing them, when it is remembered that section 4511 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 3068) provides that, among other particulars, the articles shall contain:

"First. The nature and, as far as practicable, the duration of the intended voyage or engagement, and the port or country at which the voyage is to terminate."

It will be noted that while the voyage was to Savannah and back to New York or Boston, as a final point of discharge, yet the master could decide to go to other ports and places coastwise (and doubtless intermediate), all not to exceed one month. Non constat, a round trip from New York to Savannah, stopping coastwise, might take one month, and in such event the seaman must serve. On the other hand, the master was not obligated to employ the seaman for more than one month in any event.

The meaning of the articles is by no means free from doubt, but the practical construction by the parties has resolved that doubt in favor of the conclusion that, when the seaman performed his duties for one round trip voyage (in this case "one or more trips," to wit, two), he had done the service he agreed to do. So the mate understood the engagement, and so did the claimant by depositing Rueb's wages with the Shipping Commissioner and, in its answer, by giving as its reason for delayed payment, not that the wages were not earned, but that they were not due and payable.

[2] If, therefore, the seaman had carried out his agreement so far as duration of service was concerned, the next question is whether the provision postponing the payment of wages is lawful.

Here section 4529, United States Revised Statutes, as amended in 1898 by act of December 21st (chapter 28, § 4, 30 Stat. 756 [U. S. Comp. St. 1901, p. 3077]), intervenes. That provides:

"The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he shipped, or at the time such seaman is discharged, whichever first happens. * * * Every master or owner who refuses or neglects to make payment in manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to one day's pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the Court. * * *"

It is claimed that the provisions of this statute may be waived, and in support of this view claimant cites The Lillian (D. C.) 131 Fed. 375, and The Joseph B. Thomas (D. C.) 136 Fed. 693, and Id. (C. C. A.) 148 Fed. 762. I think these cases are distinguishable from that at bar, but, in any event, I am of opinion that the master and seaman cannot, by contract, abrogate the provisions of section 4529. Without enlarging on the history of legislation of this character, it may be said that Congress has long regarded seamen in the nature of wards whose rights must be safeguarded. The requirement to pay them promptly is not to be overridden. If, in the practical conduct of a re-

sponsible steamship company, such a provision is found inconvenient or otherwise unsatisfactory, the remedy is by appeal to the legislative body, but the courts must construe such a statute, not merely by its letter, but in sympathy with the legislative intent.

It is true that the statute does not in terms declare void an agreement in contravention thereof, but, in speaking of the termination of "the agreement," it is clear that Congress had in mind that, no matter what "the agreement" was, the seaman's wages must be paid within two days after the man had duly performed the service required by "the agreement." Holding this view, I am of opinion that the statute is controlling, and that the provision in the articles here discussed was void and of no effect.

It remains to determine whether claimant must pay the penalty prescribed by the statute where the master or owner neglects to pay "without sufficient cause." I can readily imagine occasions where the master refuses or neglects to pay for "sufficient cause." Such an instance is illustrated in The Amazon (D. C.) 144 Fed. 154.

In George W. Wells (D. C.) 118 Fed. 761, it was not necessarily to be expected that a master would know that an outstanding assignment of wages was void as matter of law. But, in the case at bar, the failure to pay is because of the articles themselves, and the fault is clearly attributable to the owner. But, whether in such instance the fault be that of the owner or the master, the result is the same.

To hold that an owner or master may escape the penalty prescribed in the very statute which he seeks to avoid is to strip the statute of the precise purpose for which, in that particular, it was enacted. However debatable a question arising under a statute may be, it is no excuse that one has made an honest error in the interpretation of that statute.

The final question to be considered is the amount of the penalty. Fifteen days elapsed between the date when Rueb's wages became due and the date when claimant deposited the amount of these wages with the Shipping Commissioner. Libelant claims that the penalty should run to January 30, 1913, the date when claimant filed its answer. I see no logical reason for this measure of time. Penal statutes are strictly construed, and I think a reasonable and sound rule is to count the time between the date when payment was due and the date when the amount of the wages was deposited with the Shipping Commissioner.

Libelant may therefore have a decree for the $18 wages and $15 wages by way of penalty, with costs.