## THE THOMAS TRACY.

Circuit Court of Appeals, Second Circuit. February 6, 1928.

### No. 209.

1. Seamen ⊂⇒7—Shipping articles, though entitled to liberal construction, may reserve latitude for events subsequently arising from exigencies of trade.

While shipping articles are mercantile documents, and entitled to liberal construction in order to carry out the intentions the parties had in mind, yet a seaman is required to know what kind of a voyage the master is planning to undertake; however, they may reserve on their face sufficient latitude for events which may subsequently arise from exigencies of a successful participation in carrying out trade.

2. Seamen ⊂⇒7—Shipping articles, when in doubt, are most strongly construed against ship (46 USCA §§ 574, 575).

Shipping articles required under Rev. St. §§ 4520, 4521 (46 USCA §§ 574, 575; Comp. St. §§ 8311, 8312), when in doubt, are most strongly construed against the. ship.

3. Seamen ⊂⇒21(4)—Deserting seamen are subject to forfeiture of wages.

Seamen who leave ship by desertion are subject to forfeiture of wages, but they are entitled to benefit of doubts which may exist.

4. Seamen ⊂⇒7—Shipping articles, attempting to describe voyage and referring to time not exceeding six months, held subject to construction as employment for one voyage.

Under shipping articles, attempting to describe voyage and referring to time of not to exceed six months, seamen were entitled to construe articles as requiring shipment from one voyage only, which was completed when ship was discharged.

5. Seamen ⊂⇒33—On master's refusal to pay seamen wages under honest misconstruction of shipping articles, penalty is not recoverable (46 USCA § 596).

Where master refused to pay seamen their wages under honest misconstruction of the meaning of terms of shipping articles, penalty imposed by Rev. St. § 4529 (46 USCA § 596; Comp. St. § 8320), was not recoverable, since such misconstruction of meaning of shipping articles constitutes sufficient cause to withhold wages.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Nils Olsen and others against the steamer Thomas Tracy; M. & J. Tracy, Inc., claimant, to recover wages and penalties. Decree for libelants, and claimant appeals. Modified.

Foley & Martin, of New York City (William J. Martin and Edward E. Elder, both of New York City, of counsel), for appellant.

John T. Little, of New York City, for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The appellees signed articles as seamen with appellant, on December 16, 1925, as follows:

"We, the undersigned, crew of the steamship Thomas Tracy, whereof W. E. Bagley is the present master (or whosoever shall go as master), now bound from the port of coastwise to voyages, and back to a final port

of discharge north of Cape Hatteras, and, if so desired by the master, one or more other voyages to Mexico, West Indies, or ports in the United States on the Gulf or Atlantic coasts, with the right to tow or to assist any vessel in distress, with liberty to call at intermediate ports, not to exceed in all six calendar months, do agree that, in consideration of the monthly wages against the name of each member of the crew, hereunder set, they severally shall and will perform the above mentioned voyage or voyages. And the said master doth hereby agree with and hire the said crew for the said voyage or voyages, at such monthly wages, to be paid pursuant to this agreement, and the laws of the Congress of the United States of America. * * *

"And it is further agreed that, if any member of the crew shall desert the vessel before the completion of this agreement, he shall forfeit all the wages he has then earned. * * * *"

The steamship made one voyage under these articles, and returned to the dock at Astoria, Long Island, on December 23, 1925. At noon of that day, one of the appellees, speaking for all, asked if the ship was going to sail on or before Christmas, and was assured by the master that she would not, although this is denied by him. Appellees had worked on that morning while the cargo was being unloaded. On Christmas Day, after dinner, the crew was ordered to put down the strongbacks and proceed to put to sea, whereupon the appellees assert that they announced their intention to quit, and the mate said that they would have to see the captain. They did so and demanded their wages, which were refused. The captain said: "I told them I would not give it to them, because they had not given me proper notice." Thereafter the libelants demanded time slips from the company's office, whereupon the master made out slips containing a notation that they had refused to do necessary work, and the appellees refused to accept such time slips. They thereupon took their belongings and left the ship. On the other hand, the ship's officers testified that the appellees visited the master's office, that a row ensued, and they became deserters, and for this reason the master declined to pay them. The amount of their pay is $89.80, which, with penalties, has resulted in a decree for $11,235.70.

The District Judge found that the appellees were not deserters, and that they were entitled to their wages when demanded. The appellant maintained then, as it does now, that the appellees were obliged to make more than one voyage, and that by the terms of the articles one or more voyages could have been made within the six months' time referred to therein. The District Judge heard the witnesses, and concluded that the appellees did not intend to sail on Christmas Day, and he found that they had been assured that the ship would not sail, and for that reason had not remained aboard, intending to go on the next voyage after Christmas. He further found that the discharge of the ship had been completed when the appellees demanded their wages, and that they waited until that time because, if they had refused duty before then, they would have been subjected to discipline. He concluded that the voyage ended after the discharge of the cargo, and, "if libelants had turned to and assisted in getting the ship ready to sail, they could not have left after the voyage commenced." He further found that the controversy "was due to the honestly mistaken belief of the master that the articles were for six months, whereas they were for the voyage."

Section 4520 of the Revised Statutes (46 USCA § 574; Comp. St. § 8311) required the master to make an agreement in writing with every seaman on board this vessel. The Elihu Thompson (D. C.) 139 F. 89; The Pacific (D. C.) 23 F. 154. Section 4521 of the Revised Statutes (46 USCA § 575; Comp. St. § 8312) made the ship liable for the highest rate of wages, if no such agreement were made, and also exempted seamen from the penalties and forfeitures for misconduct on their part.

[1-3] The meaning of the articles signed is not free from doubt, and, as found, the master and the appellees were honest in their respective constructions of the articles. This led to the mistaken belief as to their meaning. The practical construction by the parties in carrying out the terms of the articles is of assistance in removing doubt as to what was intended. The Catalonia (D. C.) 236 F. 554; The City of Montgomery (D. C.) 210 F. 673. The doubt is whether it was intended that there should be one voyage, or more than one, which should not last more than six months. While shipping articles are mercantile documents, and entitled to liberal construction in order to carry out the intentions the parties had in mind, still a seaman, when asked to sign, is entitled to know what kind of a voyage the master is planning to undertake; but they may reserve on their face, if need be, sufficient latitude for events which may subsequently arise from the exigencies of a successful partici-

pation in carrying out trade. United States v. Westwood (C. C. A.) 266 F. 696. The articles, when in doubt, are most strongly construed against the ship. Seamen who leave the ship by desertion are subject to forfeiture of wages. But they are entitled to the benefit of doubts which may exist. City of Norwich (C. C. A.) 279 F. 688.

[4] The seamen here could reasonably and honestly have construed these articles to mean but one voyage, in view of their terms. The appellees worked, as found below, until the cargo was discharged, and then asked for their pay, and asserted that they did not intend to put to sea again on the vessel. The controversy arose when the crew were ordered to put down the strongbacks and prepare to put to sea. It was then that the appellees announced that they intended to leave. There was reason to believe that one voyage was intended. Reading the phrase and considering the mandatory provision of the statute, requiring written articles for the voyage as to the term of time for which the seaman is shipping, there is indefiniteness. They attempt to describe the voyage, and not the term of time. The time is referred to as "not to exceed in all six months." They probably intended to put a limitation upon the possible duration of the voyage, and there is doubt as to whether or not it was intended to employ for six months. In that construction, the voyage was completed when the ship was discharged. United States v. Westwood (C. C. A.) 266 F. 696; The Catalonia (D. C.) 236 F. 554; The City of Montgomery (D. C.) 210 F. 673; The Falls of Keltie (D. C.) 114 F. 357.

[5] At that time the appellees should have been paid their wages, but we think the penalties imposed were not justified under these circumstances. Section 4529 of the Revised Statutes (46 USCA § 596 [Comp. St. § 8320]) requires payment of seamen's wages within two days after the termination of the agreement under which he was shipped, or at such time as the seaman is discharged, whichever first happens. Neglect to pay, as provided, without sufficient cause, imposes a penalty of a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, and that sum is recoverable as wages in any claim made before the court. It is based upon this provision for penalties that the wages, amounting to $89.80, have grown to $11,235.70. The wages were not withheld without sufficient cause. The Amazon (D. C.) 144 F. 153; The Express (D. C.) 129 F. 655; The Alice B. Phillips (D. C.) 106

F. 956. And therefore it was error to impose the penalties.

The circumstances, the indefiniteness of the articles, and thus uncertainty as to the intention of the parties to them, constituted a sufficient cause for the failure to pay the wages when demanded. It permitted of an honest, although mistaken, belief that the appellees had been employed for more than one voyage. But a very short part of the six months' period had elapsed. The statute does not mean that the refusal to pay wages must be based upon a legal defense to the wages. It means that, although it may ultimately be determined that there is no actual legal defense to the claim for wages, nevertheless, if the owner or master had sufficient cause to withhold the wages, when demanded, beyond the time mentioned in the statute, it relieves the vessel of the imposition of the penalties.

Accepting the facts found below, of an honest misconstruction of the meaning of the terms thereof, there was sufficient cause to withhold it. O'Hara v. Luckenbach (C. C. A.) 16 F.(2d) 681; The Trader (D. C.) 17 F. (2d) 623. The master was honest in his belief that the appellees were deserters in refusing to put to sea as the ship prepared after the cargo was discharged, and the conduct of the appellees, as he testified, reasonably led him to believe that they would do so. Errors of judgment, made honestly, such as this, should not penalize the ship, as it would here, if this decree were affirmed.

The decree will be modified, by allowing a recovery for the wages of $89.80 only, with interest.

Decree modified.