186 F.2d 496
 WIEDER
v.
ISBRANDTSEN CO., Inc.
 No. 108.
 Docket 21788.
 United States Court of Appeals Second Circuit.
 Argued December 11, 1950.
 Decided January 11, 1951.
 
 Libellant sued for a balance of earned wages remaining unpaid at the date of the commencement of the action, together with double wages, pursuant to 46 U.S.C.A. § 596, for withholding payment without sufficient cause. The district court appointed a Commissioner to hear the proof and report. The Commissioner, having heard the proof, made a report which included the following findings of fact and conclusions of law:
 "Findings of Fact
 "1. The Libellant is an American Seaman and the respondent is a domestic corporation, which managed and controlled the American Steamship `Stephen W. Kearney,' and, was libellant's employer at all of the times mentioned in the libel. 2. Libellant signed articles in June, 1948 at Newport News, Va., on board the `Stephen W. Kearny' for service as Chief Engineer for a voyage to Santos and one or more ports in the world as the Master might direct and return to a port north of Cape Hatteras, for a period not exceeding twelve calendar months. 3. Libellant's basic monthly wage was the sum of $681.90 per month, of which he allotted $250.00 per month to his wife. (46 U.S.C.A. § 599.) 4. At Panama, the Master purchased a quantity of D. D. T. which he ordered the Steward to use in all rooms in an effort to exterminate cockroaches and, enroute between Panama and Honolulu, the libellant developed a rash for which he was treated by the Master pursuant to radio instructions of the U. S. Public Health Service. The libellant received treatment at Honolulu during the vessel's stay at that port, but, enroute to Kobe, Japan, his condition became so aggravated that when the vessel reached Kobe, he required hospitalization therefor. 5. On January 14th, 1949, at Kobe, Japan, the libellant was discharged from the vessel and was thereafter hospitalized at the U. S. Eighth Army Station Hospital and, at the time of his discharge, the libellant had earned wages, due and owing him, in the sum of $1491.28 which sum, or part thereof on account, was not paid to him at the time of his discharge, though payment thereof was demanded by libellant. 6. Captain John C. Bugel, Master of the `Kearney' made out a pay voucher showing a balance of $1491.28 due to the libellant which he left with the respondent's Kobe Agent, A. P. Pattison & Co. and which the Agent refused to honor without authorization from `Isbrandtsen.' On January 15, 1949, the Master cabled the respondent that the libellant had been hospitalized, to cancel his allotment to his wife and to authorize payment by A. P. Pattison & Co. of $1491.28 to the libellant. 7. In response to the Master's cable and by communication dated January 18, 1949, the respondent notified A. P. Pattison & Co. that `No cash advances should be given him' and that `All expenses in this case are for our account but here again no cash advance should be made without our specific authority, regardless of how much money the man tells you he had coming in wages and overtime.' No specific authorization was ever given by the respondent to its Kobe Agent to pay libellant his earned wages as requested by the Master of the `Kearney.' 8. The Master sailed on the `Kearney' from Kobe, Japan on January 19, 1949. The libellant, Walter T. Wieder, was discharged from the Hospital on January 25, 1949, and on January 28, 1949, he was signed on the S/S `Trimont' as supercargo. 9. After having received a letter from his wife that she needed funds, the libellant demanded that the Kobe Agent telegraph the respondent to pay his wife. On January 31, 1949, A. P. Pattison & Co., Inc., cabled the respondent that the libellant insisted that allotments be paid to his wife for February and March 19th. In reply `Isbrandtsen' advised the Kobe Agent that `Wieder's allotments not reinstated, will advance wife portion earned wages if authorized.' On February 1, 1949, Wieder authorized payment of $500.00 out of his earned wages. On February 13, 1949, the libellant departed from Kobe, Japan on board the S/S `Trimont.' On February 14th, 1949, the libellant's wife, at Brooklyn, New York, cashed a check of Isbrandtsen Company, Inc., for $500.00 dated February 5, 1949. 10. Upon his return to New York, libellant made further demands for the payment of the balance of his earned wages. On April 8, 1949, the respondent paid the libellant a further sum of $500.00 on account of his earned wages by check dated the same day. After the libel was filed in the office of the Clerk of this Court, the respondent tendered to the Attorney for the libellant a check for $491.46, dated April 28, 1949, but certified May 20, 1949, which check said attorney returned to the respondent. On July 1, 1949, the respondent deposited the balance of the libellant's earned wages in the Registry of this Court. 11. No sufficient cause, excuse or moral justification for the failure by the respondent to pay the libellant his earned wages, or any part thereof, upon his discharge from the `Kearney' at Kobe, Japan, or within a reasonable time thereafter, has been shown.
 "Conclusions of Law
 "1. The respondent refused or neglected, without sufficient cause, to make payment of the earned wages, or any part thereof, due to the libellant at the time of his discharge from the `Kearney' at Kobe, Japan, pursuant to the provisions of Title 46 U.S.C.A. Section 596 and accordingly the libellant is entitled to a decree for statutory double wages in the amount of $4500.54."
 The libel was filed May 4, 1949. The evidence shows that libellant in April unsuccessfully sought to obtain the balance due; that respondent sent a check for $491.46 to libellant's attorney by a letter dated May 20 (after the filing of the libel) which said, "This is in accordance with our original offer to tender his wages on May 2, 1949"; that this check, which included nothing for double wages, bore the legend "In Full Settlement of Above Account," and was accompanied by a voucher which read, "Wages, Overtime, Bonus Due Per CPV 4/7/49"; and that libellant's attorney returned this check to respondent on May 23.
 In his opinion, included in his report, the Commissioner said: "Considering the conditions existing at that time in Japan, it is only fair to assume that the respondent should have had a reasonable time after receipt of the Captain's cable to authorize payment of Wieder's wages. A reasonable length of time, certainly, in this instance, would have been the length of the period that Wieder remained at Kobe, namely, about 30 days. * * * Bearing in mind the confused conditions existing in Japan in January, 1949, and the lapse of a month after Wieder had returned to New York City, before the libel was filed on May 4, 1949, I am of the opinion that a fair award would be a computation of a double daily rate of $45.46 from February 13, 1949 to May 23, 1949 inclusive, a period of 99 days and that the libellant accordingly is entitled to recover from the respondent double wages in the amount of $4500.54 plus costs and disbursements."
 Both parties filed exceptions to the Commissioner's report. The district court overruled these exceptions, and made a decree, in libellant's favor, based on the report. Respondent appealed, and libellant filed a cross-assignment of error.
 Harry D. Graham, New York City, for libellant-appellee.
 Corydon B. Dunham, New York City (Raymond E. Stefferson, New York City, of counsel), for respondent-appellant.
 Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 1. Respondent's Appeal.
 
 
 2
 The Commissioner, who heard the oral testimony of the libellant, of the ship's master, and of several other witnesses, believed libellant's testimony, which is, to say the least, not refuted by respondent's written communications with its own agents. In such circumstances, of course, the district judge had to accept the Commissioner's findings, and so, too, must we.[1] 2. Libellant's Cross-Assignment of Error.
 
 
 3
 We agree, however, with libellant that the Commissioner erred as to the period during which respondent wrongfully withheld the balance of the wages.[2]
 
 
 4
 (a) There is nothing to support the Commissioner's statement that conditions in Japan made it reasonable to delay payment until libellant left Kobe.[3] Under 46 U.S. C.A. § 596, he should have been paid four days after his discharge, or twenty-four hours after the cargo was discharged, whichever first happened, i. e., on January 18. (b) His attorney properly refused to accept the conditional payment tendered on or about May 23. (c) As the respondent made the deposit in the Registry on July 1, the double wages are recoverable from January 19 through June 30 inclusive.
 
 
 5
 Affirmed on respondent's appeal; modified on libellant's cross-assignment.
 
 
 
 Notes:
 
 
 [1]
 See, e.g., Ozanic v. United States, 2 Cir., 165 F.2d 738, 742
 
 
 [2]
 Here we do not disagree with any facts found by the Commissioner on any issue involving credibility
 
 
 [3]
 Indeed, respondent's brief says: "It is to be borne in mind that respondent had an agent at Kobe, A. P. Pattison & Co. Inc., whose function it was to furnish the vessel with money, convert American dollars to scrip or Japanese yen, or vice versa, or pay by certified check against American banks. It is inconceivable that a vessel like the S. S. Stephen W. Kearney should call at a foreign port without the need of some means for the discharge of fiscal obligations and to that end the ship's agent, A. P. Pattison & Co., Inc., supplemented the duties of the master."