**John KALANTZIS, Libellant,**

v.

**Joseph B. MESAR et al., etc., Respondents.**

**THE SEALIFE.**

**No. 202.**

United States District Court
E. D. Virginia, Newport News Division.
July 26, 1955.

---

· 746

Morewitz & Morewitz, Newport News, Burt M. Morewitz and J. L. Morewitz, Newport News, Va., for libellant.

Seawell, Johnston, McCoy & Winston, Norfolk, Va., John W. Winston, Jr., Norfolk, Va., for respondents.

HOFFMAN, District Judge.

Libellant has instituted this action under the provisions of 28 U.S.C.A. § 1916 against the Master of the American S. S. Sealife and its owner, Seafarer Steamship Company, a foreign corporation. An additional respondent, Orion Shipping and Trading Co., Inc., was not served with process and the action should be dismissed as to this respondent. The libel alleges four causes of action as follows: (1) the failure of respondents to provide prompt and adequate medical care when libellant was stricken with acute appendicitis while the vessel was en route to Japan from Korea in January, 1953; (2) the failure to provide maintenance and cure subsequent to March 13, 1953; (3) the failure to pay the balance of earned wages alleged to be due libellant on January 16, 1953, when the libel states libellant was discharged; and (4) a claim for two days pay for each and every day libellant's earned wages were withheld from him "without sufficient cause".

There is no evidence to support the first and second causes of action and they will be dismissed. In fact, libellant did not appear at the trial and no apparent effort was made to take his deposition. All of the testimony indicates that the Master acted promptly and that, with no complications arising from the operation, libellant would not have been entitled to maintenance subsequent to the time required for a normal recovery.

In approaching the third and fourth causes of action, the factual situation may be summarized from the deposition of the respondent, Mesar, the exhibits introduced, the answers to interrogatories, and the stipulations of proctors, as follows: Libellant was employed on said vessel as an oiler on June 29, 1952, at a monthly wage of $302.32, for voyages in any part of the world as directed by the Master and back to a final port of discharge in the United States, for a term *not exceeding* twelve months. The shipping articles were opened in Philadelphia, Pennsylvania, on July 3, 1952, and closed in San Pedro, California, on March 9, 1953. On one of the voyages, from Inchon, Korea, to Kure, Japan, libellant complained of pains and was given ice packs for relief. When the vessel arrived in Kure on January 15, 1953, libellant's ailment was diagnosed as appendicitis and he was taken to Yokohama by rail. On January 19 the operation was performed. Libellant, rejoined the ship on January 29 and the vessel sailed the following day for Pusan, Korea. The Master testified that libellant rejoined the ship "as a man who is going to be repatriated home" and that libellant did no work thereafter as per instructions from the Master. After leaving Pusan the next and final port was San Pedro, California, where libellant first demanded his earned wages and received the sum of $3,279 on March 9, 1953, covering the period of his "working time" through January 16, 1953. Actually the total earned wages (including bonus) for six months and nineteen days aggregated $4,482.97 covering the following items:

| | |
|---|---|
| Wages earned | 2005.39 |
| Bonus | 665.10 |
| Bonus | 402.50 |
| Overtime | 1409.98 |

The foregoing items were subject to lawful deductions for taxes, etc.

According to practice, wages accruing from the time libellant became disabled were handled under an insurance agreement, and these "wages" do not appear on the crew payroll. At San Pedro the paymaster came aboard the vessel and, in libellant's presence, the paymaster advised that wages accruing after the time libellant left the vessel in Japan and became ill would be handled by respondent's New York office. Libellant agreed to this arrangement. The Shipping Commissioner placed a notation on the Certificate of Discharge indicating the discharge of libellant at Yokohama, Japan, on January 16, 1953, but this was not the action of the Master as the prior notation reveals the discharge date to be March 8, 1953.

Libellant left San Pedro after receiving his wages through January 16, 1953, and with a full understanding that his wages from January 17, 1953, through March 8, 1953, both inclusive, would be paid to him in New York. When he arrived in New York, when he visited respondents' office, and when he actually received the additional sum of $720 is not clearly revealed by the evidence, but respondents took a release in that amount from libellant dated March 16, 1953. It is fair to assume that libellant received his money on that date. By reason of the omission of "bonus" payments, libellant did not receive an additional sum due to the extent of $150.70 until June 3, 1953, after libellant's proctor, by letter dated March 30, 1953, demanded same. Under date of April 14, 1953, respondents admitted this omission and volunteered to pay same forthwith. In this letter, respondents requested proctors to advise whether the check for $120.70 (amount due, less deductions) should be forwarded directly to libellant or to his proctors. It appears from the record that a telephone conversation from proctors immediately prior to June 3, 1953, resulted in a check being forwarded to counsel.

The Court places no importance on the release executed by libellant except as evidence to show the date of the receipt of $720 in New York. The stipulation of counsel indicates that the funds received by libellant were legally due him. If re-

spondents wish to rely upon the release as a bar to this action, then why did they thereafter pay $150.70 due him? The breakdown of the payment in the sum of $720 is as follows:

| | |
|---|---|
| 3 days travel @ $8.00 | $ 24.00 |
| 1 mo. and 22 days at $302.82 per mo. from 1/17/53 to 3/9/53 | 524.16 |
| Transportation — San Pedro to New York | 164.00 |
| Transportation — New York to Baltimore | 7.84 |
| Total | $720.00 |

The questions presented for determination by the Court are:

(1) Should the bonus of $2.50 per day be paid from January 17, 1953, to January 29, 1953, while libellant was in transit by rail from Kure to Yokohama and during his confinement in the hospital and hotel prior to rejoining the vessel?

(2) Should respondents, under the evidence adduced, be required to pay any maintenance for four days following libellant's release from the hospital, during which time he presumably remained at the hotel?

(3) Was there "sufficient cause" to delay payment of earned wages due libellant at San Pedro until he arrived in New York and, if so, how long was the delay?

(4) Are bonus payments considered as part of earned wages due at the time of discharge and, if so, may respondents avoid liability of the statute under existing circumstances?

(5) Assuming liability of respondents under (4) above, for what period of time should respondents be required to pay?

### The Payment of Bonus While Seaman is on Land

It will be noted that libellant received his bonus during the time the vessel was in Pusan, Korea, discharging cargo. It may be argued that this is a strong inference that the bonus should similarly be paid while libellant was in Japan at the hospital and before he rejoined the vessel on January 29, 1953. As to the days while on land in Japan, the claim is disallowed. While in Korea, there is every inference that libellant was on the vessel which would entitle him to the bonus of 100%.

■ As to the time on land in Japan, the libellant's rights are barred under Shields v. United States, 3 Cir., 175 F.2d 743, 745, Koehler v. United States, 7 Cir., 200 F.2d 588, 590, Farrell v. United States, 2 Cir., 167 F.2d 781, 784, Phillips v. Matson Nav. Co., D.C., 62 F.Supp. 247, 248. The intent and purpose of the so-called "war bonus" was not to meet a situation while a crew member is on land. Decision 2B of the Maritime War Emergency Board provided: "bonus shall not be payable while a crew member is on land". The decisions, interpretations and clarifications were binding on the parties hereto as disclosed by the Working Agreement (art. 1, p. 11, General Working Rules). As was said in Farrell v. United States, supra, the decision of the Board makes no exception in the case of one leaving his ship because of illness or injury.

Libellant rejoined the vessel on January 29, 1953, and she sailed on January 30. According to respondents' interpretation of the "war bonus" provision, libellant was entitled to the bonus while on the vessel in Korea. It follows that the bonus payments have been correctly computed by respondents.

### Maintenance

■ There is no proof in this case as to who paid libellant's expenses while presumably at the hotel in Japan, following his release from the hospital and before rejoining the vessel. There is no evidence that libellant could not have rejoined the vessel upon his release from the hospital, or that he was acting under any medical advice in remaining in the hospital. The claim for maintenance is denied.

### Delay of Payment of Wages

It will be observed that the Master paid libellant at San Pedro (within 24 hours after landing) for all earned wages to and including January 16, 1953. Respondents did not, then or any time thereafter, deny owing libellant for the period beginning January 17, 1953, and ending March 8, 1953. Libellant was going to New York and, after the explanation was made to the effect that the balance of his money would be forthcoming under the terms of an insurance agreement (because of his illness), he readily agreed to defer payment until he reached New York. It is noted that he received three days travel time at $8 per day. When he left San Pedro, how he traveled, and when he arrived in New York is not revealed by the evidence.

■ It is not incumbent upon any seaman to look to the collection of the balance of his wages at any place other than at the time and place of his discharge. The mere fact that a portion of these wages were forthcoming under an insurance agreement due to libellant's illness affords only slight reason for neglect to make payment. The Master should make payment as required by law, and if restitution in part is forthcoming from an insurance company, this is the duty of the Master and the shipowner.

Standing alone, the agreement of libellant to postpone in part the payment of wages due from January 17, 1953, through March 8, 1953, is no defense. Such an agreement on the part of the seaman is apparently void. The Constellation, D.C., 20 F.Supp. 892, The City of Montgomery, D.C., 210 F. 673, 675. It is contrary to the spirit, if not the letter, of 46 U.S.C.A. § 600.

■ If there had been any intimation that the respondents had intended to act in an arbitrary manner, the Court would not hesitate to impose the double wage provision of 46 U.S.C.A. § 596. It is readily recognized that the phrase "without sufficient cause" must include more than a valid defense to the claim for wages. Korthinos v. Niarchos, 4 Cir.,

175 F.2d 730, 734. The purpose of the Act, in addition to securing prompt payment of wages, was to protect seamen from the harsh consequences of arbitrary and unscrupulous action of the employers; it being acknowledged that seamen, as a class, are peculiarly exposed to such action. But here we have a combination of circumstances which are rather unusual, with the wages for the time accumulated during libellant's illness being paid in whole or in part from insurance funds, and the libellant registering no protest to a delayed payment. This is not a case in which the seaman had been left stranded in the port of San Pedro without funds as he received $3,-279 in wages on March 9, 1953. The acts of the respondents were in no sense arbitrary and certainly could not be considered unscrupulous. While the procedure adopted by respondents was irregular, it cannot be said that they ever "refused" to make payment and, in the opinion of the Court, their "neglect" was with "sufficient cause" under all the facts and the Court declines to impose the double wage provision for the period from March 9, 1953, to March 16, 1953.

### The Status of Bonus Payments

■ That bonus payments are a part and parcel of earned wages payable as such cannot be successfully controverted in light of the opinion in Lakos v. Saliaris, 4 Cir., 116 F.2d 440. Bearing in mind the factual situation, we again come to a consideration of the intent and purpose of the term "without sufficient cause" in determining the liability of respondents under the double wage provision of § 596. When libellant reported to respondents' New York office, he was immediately paid his wages for the period of time he was either ill or convalescing, i. e., January 17, 1953, through March 8, 1953, the date of his discharge. However, respondents' New York office did not include any bonus for the time libellant was on the vessel in the so-called bonus areas—the result was that libellant received in New York the additional sum of $524.16, whereas he should

have received a bonus payment added thereto in the sum of $150.70, less taxes aggregating $30. There is no evidence that this was ever discussed at New York on March 16, 1953, when libellant received his wages for his non-working time spent on board the vessel. When proctors for libellant addressed a letter to respondents dated March 30, 1953, respondents replied on April 14, 1953, and acknowledged the failure to compute the bonus pay from January 29 to March 8. It will be noted, however, that the letter of March 30 from proctors for libellant made claim for maintenance and cure, as well as other items. While the letter of March 30 is not in evidence, the reply of April 14 fairly well establishes the tenor of its contents.

This is not a situation in which respondents delayed or refused to make payment of the bonus for an unreasonable length of time. Only the log books revealed the dates on which the vessel entered and departed the so-called Area V (100% bonus), and the so-called $2.50 per day bonus area. This information was, of course, available at San Pedro where the crew was paid and discharged. When the log books were forwarded to New York is not indicated, but it is nevertheless true that, as soon as the matter was brought to respondents' attention, respondents agreed to pay the bonus money for the time libellant was on the vessel in the bonus areas even though he was not working.

The matter is further complicated by the action of the Shipping Commissioner at San Pedro in changing the date of libellant's discharge from March 8 (as listed by the Master) to January 16 (the date libellant left the vessel in Kure, Japan). Shipowners are not expected to have attorneys available at all times to pass upon involved legal problems which may arise and, under the circumstances of this case, it cannot be said that respondents acted without sufficient cause in delaying payment of the bonus.

While not directly in point, the cases of Korthinos v. Niarchos, supra, and Livanos v. Pateras, 4 Cir., 192 F.2d 319, touch upon the subject. In the Korthinos case, Judge Parker said [175 F.2d 733]:

"We do not think, however, that the failure to pay again the amount of advances after there has been a settlement in good faith and the amount of wages due the seamen has actually been paid with no question raised as to the legality of the advances, can be said to be a failure to pay wages 'without sufficient cause', so as to subject the vessel to a claim for double wages under the provisions of 46 U.S.C.A. § 596."

The Livanos case stands for the principle that inadvertent clerical errors in overtime calculations furnish no basis for imposing the double wage provision.

Libellant urges that Wieder v. Isbrandtsen Co., Inc., 2 Cir., 186 F.2d 496, and The Fletero v. Arias, 4 Cir., 206 F.2d 267, furnish abundant authority for the double wage provision of the statute. The factual situation in the Wieder case is entirely different and, in addition, respondents declined payment of the double wages without cause. Had the evidence in this case sustained the allegation that libellant was discharged in Japan on January 16, this case would be persuasive, but the facts do not bear out this contention. The Fletero case involves a like principle. See also Bender v. Waterman S. S. Corp., 3 Cir., 166 F.2d 428, Rivera v. Isbrandtsen Co., 202 Misc. 703, 112 N.Y.S.2d 70.

It becomes unnecessary to pass upon the final point hereinabove mentioned. If the Court is in error in holding that respondents' delay in making the bonus payment was *not* without sufficient cause, then the period of the delay would run from March 16, 1953, to April 19, 1953, which would allow proctors for libellant a reasonable time to reply to the inquiry propounded by respondents in the last paragraph of their letter of April 14. Certainly libellant cannot recover double pay for the period required for counsel to determine whether the

check in payment of the bonus should be sent directly to libellant or to counsel's office.

Proctors for respondents will prepare a decree dismissing the libel herein filed with costs assessed against libellant.