Dimitrious **KARVOUNIARIS**, Libellant,

v.

**THE British S/S MARIETTA**, etc., in rem, and **Phocean Ship Agency, Ltd.**, in personam, Respondents.

No. 404.

United States District Court
E. D. Virginia,
Newport News Division.
July 14, 1961.

Burt M. Morewitz, Newport News, Va., for libellant.

Vandeventer, Black, Meredith & Martin, Chas. F. Tucker, Norfolk, Va., for respondent.

WALTER E. HOFFMAN, District Judge.

In three causes of action, libellant, employed as an oiler aboard the respondent vessel Marietta, seeks (1) the balance due for earned wages, (2) a recovery for damages allegedly resulting in libellant contracting tuberculosis or aggravating a previously existing inactive tuberculosis, combined with a claim for failure to treat, and (3) a demand for maintenance, cure and wages.

Libellant signed aboard the vessel on March 2, 1957, at Hamburg, Germany. He remained a member of the crew until August 27, 1957, when he was released from the vessel at Shanghai, examined and hospitalized at Hong Kong, and subsequently repatriated by air to Hamburg. The only medical report of

any consequence is dated September 13, 1957, from a physician in Hong Kong, reading as follows:

"This patient was admitted under my care to the Matilda Hospital. He has a tuberculosis type infiltration shown in the chest X-ray. His sputum examinations were negative. In my opinion this man is fit for repatriation by air."

Other than the exhibits, certain interrogatories and answers thereto, requests for admission of facts and genuineness of documents and responses thereto, the matter was heard upon libellant's deposition. That libellant perjured himself with respect to his contention that he had not previously had tuberculosis and been treated at hospitals is apparent from the evidence. In February, 1953, libellant filed an action in this Court, same being Admiralty No. 164, against the Panamanian S.S. Spalmatori, her owners, etc., alleging that he contracted tuberculosis as a result of the unseaworthiness of the vessel. The case was settled on June 19, 1953, for $6,000. In April, 1954, libellant filed another action in this Court, same being Admiralty No. 192, against the Honduran S.S. Erato, her owners, etc., alleging that he became "gravely ill" and was not given prompt and adequate medical care. This action was settled on January 26, 1957, for the sum of $450. In each instance he was treated at a United States Public Health Service Hospital for a tubercular condition, initially with a diagnosis of "moderately advanced," and lastly as "probably inactive."

Aside from the total lack of causal connection indicating that any unseaworthiness of the vessel or negligence on the part of the ship's officers and crew aggravated any pre-existing condition, the perjured testimony completely foreclosed any consideration of libellant's main claim that his condition has again been aggravated. His days of recovery in this Court for claims relating to tuberculosis are at an end. He must realize that being a ward of the admiralty does not justify the perpetration of a fraud upon the Court. The second cause of action will be dismissed.

■ Respondents seriously urge that libellant's falsity should defeat any suggested claim for earned wages, maintenance, cure and wages following disability pursuant to British law which is controlling in this case. This contention would have merit if there was any material conflict as to the facts, but if all reasonable inferences suggest that libellant may have something due him under British law, the falsity of his statements in other respects should not *per se* destroy his right of recovery on his contractual agreement.

This is not a case in which libellant has wilfully failed to disclose a pre-existing condition at the time of his employment. In each instance he was fit for duty. Thus there is no fraud to bar his right to earned wages, maintenance, cure, etc., if the evidence reasonably points to a right of recovery.

Libellant's first contention is that he did not receive the balance of his earned wages within the time provided by British law. Article 134 of the British Merchant Shipping Act of 1894 states, with respect to foreign going ships, that the owner or master shall pay to each seaman on account, at the time he lawfully leaves the ship at the end of the engagement, two pounds or one-fourth of wages due him, whichever is least, and shall pay the remainder of his wages within two days after he leaves the ship, provided, however, that if the seaman consents, final settlement of wages may be left to. a superintendent under the regulations of the Board of Trade. The Act continues by stating that if the seaman's wages are not paid as above, "then, unless the delay is due to the act or default of the seaman, or to any reasonable dispute as to liability, *or to any other cause not being the wrongful act or default of the owner or master,* the wages continue to run until final settlement."

There remained 200 pounds due libellant upon leaving the vessel on August 28, 1957, which amount was acknowl-

edged as correct by libellant. The sum of 45 pounds was paid at Hong Kong and, after it was determined that he was to be repatriated to Germany by air, libellant was given a letter to present to the ship's agent at Hamburg to collect the balance of the earned wages through August 28, 1957. This balance, in the sum of 155 pounds, was paid at Hamburg on September 25, 1957.

■ There is no reason to continue the wages until final settlement under Article 134 of the British Merchant Shipping Act of 1894. At the outset it should be noted that a delay, due to any cause which is not the wrongful act or default of the master or owner, exonerates the respondents. In this connection the British law is not as severe as the waiting-time provisions under the statutes of the United States. Moreover, libellant never protested this arrangement and it was probably more for his benefit than that of the ship. While no English decisions have been directed to the attention of the Court, the situation is not unlike that presented in Kalantzis v. Mesar, D.C.E.D.Va., 132 F.Supp. 745, affirmed 4 Cir., 245 F.2d 705. The claim for waiting time is disallowed.

■ However, under British law, it is provided that a seaman, ill or injured in the service of the ship without fault on his part, is entitled to receive his wages until maximum medical recovery is reached, or until the end of the voyage, or for at least 12 weeks, whichever happens first. The seaman is entitled to medical care and maintenance until he reaches maximum medical recovery. Of course, he cannot receive maintenance and wages at the same time.

The status of the proof submitted is highly unsatisfactory. There is no competent medical testimony as to when libellant reached maximum medical recovery after leaving the vessel at Shanghai. He states that he visited a physician at Hamburg, but we are without the benefit of any report or findings and, in light of his perjured testimony, we cannot attach much significance to whatever he says. Admittedly the voyage did not end until January, 1958. The question is whether, in light of the credible evidence, he should be allowed 12 weeks pay from August 28, 1957.

■ Obviously libellant was sufficiently ill to be hospitalized at Hong Kong. When released for repatriation by air, it was assumed that he would be examined and treated at Hamburg. At Hamburg, libellant was paid the balance of his wages through August 28, 1957. Under any circumstances he would be entitled to his wages until his return to Hamburg—a period of 29 days. A reasonable inference from the evidence is that he was not in the state of maximum medical recovery when he arrived in Germany, and that the nature of his ailment would require a period of rest for some weeks. Considering the evidence and all reasonable inferences therefrom, the Court will allow a recovery for a total period of two months from August 28, 1957, computed at a rate of $110.60 per month, or a total of $221.20 for which a decree will be entered.

■ There is no merit to the contention that the book containing certain deductions was not produced. Section 133 (1) (2) of the British Merchant Shipping Act of 1894. The deductions were included in the wage account and approved by libellant. Furthermore, his testimony does not indicate any complaint as to these deductions. Nor is there any merit to the contention that there had been an advance against future earnings in a United States port.

The parties shall pay their respective costs. As libellant proceeded without the prepayment of costs, the respondent shall pay the costs due the Clerk and Marshal, and deduct the same from the total recovery.

Present decree.