Paul J. BRESLIN, Plaintiff,

v.

**MARITIME OVERSEAS CORP. and Intercontinental Bulktank Corp., Defendants.**

No. 85 Civ. 2848.

United States District Court, S.D. New York.

June 12, 1987.

Phillips & Cappiello, New York City, for plaintiff; Elizabeth Starkey, of counsel.

Robert K. Marzik, New York City, for defendants.

METZNER, Senior District Judge:

Plaintiff Paul Breslin commenced this action against defendants Maritime Overseas Corp. (MOC) and Intercontinental Bulktank Corp. (IBC) to recover a double wage penalty pursuant to 46 U.S.C. § 10313 for failure, without sufficient cause, to pay two days' wages due him for service aboard the S/T Overseas Alaska.

Plaintiff is a merchant seaman employed by MOC as permanent relieving chief mate on the S/T Overseas Alaska. MOC was a party to a collective bargaining agreement with the International Organization of Masters, Mates and Pilots, whose provisions set forth the hour and wage terms governing licensed deck officers aboard the vessel. Plaintiff was a member of the union. It is admitted that IBC is the owner and operator of the Overseas Alaska, but the relationship between MOC and IBC was never clarified by the papers and record in this case.

On May 10, 1984, plaintiff received a phone call from John Maresca, the manager of crew personnel for MOC, telling him to report to the Overseas Alaska at Lake Charles, Louisiana, on May 12, 1984. Breslin reported to the union hall for clearance on May 11, and was issued an assignment slip stating that he was cleared "effective May 12, 1984."

The vessel, having been delayed, did not arrive in port until May 13, at which time plaintiff boarded the vessel, presented his assignment slip to Captain Charles Laine, and signed the shipping articles. Noting that the articles provided that he was signing on only as of May 14, plaintiff complained to the captain that he was actually signing on as of May 13, and that his wages were to be effective as of May 12. The log shows that plaintiff relieved at noon on May 13. The captain replied that Kochefko, the chief mate being relieved, was working on May 13 and that there would be no "double-dipping." The captain mistakenly relied on a MOC letter dated April 5, 1983, prohibiting "double-dipping," but the prohibition applied only to masters and chief engineers. The collective bargaining agreement provided that a licensed officer's wages shall commence on the day he reports as ordered.

Plaintiff worked approximately twelve hours on May 13. He did not receive his base wages either for May 12 or May 13, but he was paid for overtime work on May 13 pursuant to the collective bargaining agreement. No explanation was given as to why plaintiff received overtime wages but not base pay for May 13. The shipping articles indicate that another licensed officer and four other seamen who boarded the vessel with the plaintiff on May 13, received wages effective the date they signed the articles, either May 11 or May 12.

On May 13 Breslin telephoned Maresca and requested that his wages commence May 12. Maresca replied that he would

look into the matter. Plaintiff later complained to the captain who relieved Captain Laine on May 23, but was told to take it up with the home office.

Thereafter Breslin received a copy of a dispatch letter from MOC dated May 22, 1984, confirming that he was to report to the vessel on May 12, with "wages effective 5/12/84."

Breslin telephoned Maresca during the third week of July to complain about the failure to pay the two days' wages. Again, Maresca told him that he would look into it.

On July 24 Breslin took a leave of absence to serve as a witness for MOC in a lawsuit pending in New Orleans. At that time he mentioned the matter to Captain Adams, the port captain for the Overseas Alaska.

On August 22, 1984, plaintiff delivered to a secretary in the union hall in Mobile, Alabama, a letter dated August 3, 1984, explaining why he believed he should be paid base wages for May 12 and 13. This was in connection with determining his vacation benefits. Maresca told the secretary that plaintiff was entitled to vacation benefits as of May 12, and plaintiff, in fact, received those benefits. The secretary then forwarded Breslin's August 3 letter to MOC where it was stamped received as of August 28, 1984.

Plaintiff telephoned Maresca again in October and also spoke to Keating in MOC's payroll office about the wage claim.

On April 12, 1985, plaintiff instituted the instant action. On April 29, 1985, defendants paid Breslin $276.48, two days' base pay.

## DISCUSSION

### I. *Entitlement to Penalty*

The issue presented is whether the delay in payment of the wages was without sufficient cause. Defendants claim that sufficient cause existed for the delay and that plaintiff's claim is barred by laches.

Section 10313(g) of Title 46 of the United States Code provides:

"When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed."

Subsection (f) of that section provides that, at the end of the voyage, the master shall pay each seaman the balance of wages due him within 24 hours after the cargo is discharged or within four days after the seaman is discharged, whichever is earlier.

It is clear that liability of the defendants is created only by showing two facts: failure to pay the wages when due, and absence of sufficient cause for the failure to pay.

The parties agree that Breslin was entitled to be paid for May 12 and 13, and that those wages became due on May 23, 1984. There is some dispute as to whether the penalty applies to May 12, but that is immaterial since it is clear that the penalty would apply if there was failure to pay wages for May 13 "without sufficient cause." Defendants maintain that Captain Laine's honest misinterpretation of the "double-dipping" prohibition and the MOC home office's clerical error constitute sufficient cause within the meaning of the statute.

In *Collie v. Fergusson*, 281 U.S. 52, 55, 50 S.Ct. 189, 191, 74 L.Ed. 696 (1930), the Court held that the statute conferred no right to recover double wages unless the delay in payment was "in some sense arbitrary or wilful, or at least a failure not attributable to impossibility of payment." We must look to the motivation of the shipowner in failing to make proper payment, and the penalty should not be imposed if there was a good faith belief that payment was not due. *Vinieris v. Byzantine Maritime Corp.*, 731 F.2d 1061, 1063–64 (2d Cir.1984).

Sufficient cause existed for the initial failure to pay Breslin for May 13. It is supported by Captain Laine's good faith misinterpretation of the company's directive concerning duplication of wages. *See Korinis v. Sealand Services, Inc.*, 490 F.Supp. 418 (S.D.N.Y.1980) (finding sufficient cause where shipowner mistakenly

withheld portion of the salary for tax purposes and immediately corrected the error after complaint by the seaman); *The Thomas Tracy*, 24 F.2d 372, 374 (2d Cir.), *cert. denied*, 277 U.S. 595, 48 S.Ct. 530, 72 L.Ed. 1005 (1928) (finding sufficient cause where master's refusal to pay wages was based on an honest misinterpretation of the terms of the shipping articles).

■ There was also sufficient cause for the failure to pay between May 23, 1984 and August 22, 1984, because the failure resulted from a clerical oversight by MOC's payroll personnel department. *See Livanos v. Peteras*, 192 F.2d 319, 321 (4th Cir.1951), *cert. denied*, 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352 (1952) ("inadvertent clerical mistake" establishes sufficient cause for delay in payment of overtime wages); *Kalantzis v. Mesar*, 132 F.Supp. 745, 750 (E.D.Va.1955), *aff'd*, 245 F.2d 705 (4th Cir.1957) (same). The discrepancy between the date on which Breslin signed the shipping articles, May 14, and the effective wage date listed on his assignment slip and dispatch letter, May 12, may understandably have given the personnel payroll department pause. Furthermore, while Maresca was less than diligent in following up on Breslin's repeated complaints, he did not actually know that plaintiff was entitled to the two days' wages until August 22, 1984.

■ As of August 22, 1984, however, when Maresca authorized Breslin's vacation benefits to begin on May 12, the personnel department must have known that plaintiff was also entitled to the underlying base wages for May 12 and 13. Defendants' continuing failure to pay plaintiff wages due him after August 22, 1984, despite repeated demands, and until April 29, 1985, was not "inadvertent" but was instead "arbitrary" and "wilful."

The Supreme Court in *McCrea v. United States*, 294 U.S. 23, 31–32, 55 S.Ct. 291, 295, 79 L.Ed. 735 (1935), held that "liability for double wages accrues, if at all, from the end of the period within which payment should have been made. It must be determined by the happening of an event within the period, failure to pay wages without sufficient cause."

This holding would appear to end the matter with judgment for the defendants, since the failure to pay Breslin's wages on May 23 was excused for sufficient cause. However, subsequent cases appear to have limited the scope of the holding.

*Southern Cross Steamship Co. v. Firipis*, 285 F.2d 651 (4th Cir.1960), is peculiarly apposite to our problem. The court read the holding in *McCrea* to be applicable only to cases where the initial delay was caused by some action of the seaman. *See also, The A.I. Baker*, 76 F.2d 871 (6th Cir.1935). It is understandable that recovery of a penalty should not be permitted where initially the shipowner has not engaged in conduct indicating refusal to pay. In *Southern Cross Steamship Co., supra*, the court went on to say that "equities not amounting to justification may be found to have existed when the wages fell due and which later became inapplicable. The District Court may in such circumstances properly postpone the running of double wages, confining them to the period after any equity supporting the shipowner's action has disappeared." 285 F.2d at 658; *see also Spero v. Steamship The Argodon*, 150 F.Supp. 1 (E.D.Va.1957); *Samad v. The Etivebank*, 134 F.Supp. 530 (E.D.Va.1955).

While the Court said in *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), that the statute "leaves no room for the exercise of discretion either in deciding whether to exact payment or in choosing the period of days by which the payment is to be calculated," it went on to state that had the court below found, after considering the equities of the situation, that the delay was with sufficient cause, it need not have applied the penalty for that period. Here, the finding, consistent with *Southern Cross Steamship, supra*, is that the period of delay after August 22 was without sufficient cause.

## II. *Laches*

Defendants contend that plaintiff's double wage claim is barred by laches because

he did not bring suit until eleven months after his wages became due. The defendants have shown excusable delay until August 22, and thus the suit was instituted only eight months after liability attached. However, even after liability attached, plaintiff made further complaint without satisfaction.

The rule of laches applies whenever a seaman unduly delays in bringing suit for the double wage penalty after the payment of wages is expressly or impliedly denied him. The critical factor is whether that delay creates the inference that the seaman deliberately delayed his action for the purpose of accruing the maximum amount of penalty time. *See generally Alier v. Sea Land Service, Inc.*, 465 F.Supp. 1106 (D.C. Puerto Rico 1979); *see also* Norris, *The Law of Seamen*, Vol. 1, Sec. 17:21, p. 535 (4th ed. 1985).

Under the facts of this case liability attached August 22, 1984. The defendants have argued in this case that they have never refused to pay. This somewhat undermines their laches argument. In any event, the failure to pay by January 1985, after the last of numerous demands was made in October 1984, justifies a finding that defendants impliedly denied liability by that time. Thus, three months elapsed between denial of liability and institution of suit, and the complaint is not barred by laches.

Judgment for $69,120 is awarded plaintiff.

So ordered.