## PETTERSON et al. v. UNITED STATES.

(District Court, S. D. New York. March 14, 1921.)

No. 785.

1. Seamen ☞33—Held not discharged, within statute providing penalty for failure to pay wages within certain period after seaman has been "discharged."

Seamen, who on expiration of term prior to end of voyage went ashore, after demanding their pay and informing the master that they would no longer be responsible for the safety of the ship, but who thereafter agreed to an extension of the articles and went back on board, and on end of voyage received full pay and a bonus of a month's pay, and signed a release of the ship under Rev. St. § 4552 (Comp. St. § 8341), which was not set aside for good cause under section 4530 (section 8322), held not discharged, under section 4529 (section 8320), requiring master or owner to pay seaman his wages within a specified time after he has been discharged or pay penalty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Discharge.]

2. Seamen ☞19—Seaman discharged with own consent not entitled to bonus.

A seaman discharged with his own consent in a foreign port is not entitled to a month's bonus, under Rev. St. § 4581 (Comp. St. § 8372); such discharge being voluntary.

3. Seamen ☞10—Held not entitled to difference between subsistence agreed in articles and shore allowances during time when ashore, when they could have lived on board.

Seamen, who on expiration of term prior to end of voyage demanded the right to go ashore, but thereafter went back on board and agreed to an extension of the articles, could not, on end of voyage, recover the difference between the subsistence agreed in the articles and the shore allowances, where the "wage scales and working conditions aboard ship" provided for subsistence allowances only "when subsistence is not provided on board," or "when in port and board is not furnished," or "when crew is not boarded aboard the vessel," since such seamen could have lived on board during such time, if they had chosen to so do.

4. Seamen ☞33—Court will not aid them to catch at penalties, where they have suffered no wrongs.

Though seamen are wards of the courts, and are protected against their own carelessness, and though the statutes, especially the revision of 1915, show an increased solicitude for their welfare, they remain in some measure persons sui juris, and the court will not aid them to catch at penalties, where they suffered no wrongs.

In Admiralty. Libel by Robert Petterson and others against the United States. Libel dismissed.

Libel by eight seamen against the United States, as owner of the steamship Bushong, for double pay from May 10 to July 3, 1920. The libelants "signed on" on November 11, 1919, for a voyage from New York to Alexandria, Egypt, and return, north of Hatteras, "for a term of time not exceeding six calendar months." The ship discharged her cargo at Alexandria, and on her return reached Gibralter on March 31, 1920. The master was out of funds and could no longer disburse the ship, and apparently for that reason lay in the roads until May 10, 1920, when six of the libelants asserted that the voyage was up and demanded their pay of the consul at that port. He counseled that they have patience and wait, and they went back on board. On June 4, 1920, they repeated their demand and asked to be allowed to go ashore. The

consul again urged them to be patient, but said that they might leave as they wished. This they did, writing a letter to the master to say that they "resigned" from the ship. On June 15th they were joined by Leavitt and Haaverson, the other two libelants, whose term of six months had expired on June 14, 1920.

On June 26, 1920, one of them, Hanson, was discharged by the consul and went to England. It does not appear whether he was discharged on his own application or not, but he was paid in full to the day of discharge and gave a release. On July 3, 1920, the others made an agreement with the master before the consul to work the ship back, upon the master's promise to pay all arrears and a bonus of one month's pay in addition. This they did, and were paid off in accordance with this agreement and discharged at New York before the deputy shipping commissioner, at which time they signed a release of the ship in usual form according to Revised Statutes, § 4552 (Comp. St. § 8341).

They now sue on the theory that from May 10, 1920 (or June 14, 1920, in the case of Leavitt and Haaverson), double pay became due under Revised Statutes, § 4529 (section 8320) and Hanson sues in addition, under Revised Statutes, § 4581 (Section 8372), for a month's bonus because of his discharge in a foreign port The eight also make claim for the difference between their subsistence expenses ashore at Gibralter from June 4 to July 3, and the union rates agreed in the articles.

Their ratings were as follows: Robert Petterson, chief mate; Sebastian K. Wolkowski, second mate; Henry K. Hannah, Jr., third mate; Gustav Kleinert, first assistant engineer; Nil C. Hanson, third assistant engineer; Emory J. Barnes, wireless operator; Paul Leavitt, seaman, later carpenter; James Haaverson, seaman.

Harold K. Hines, of New York City, for libelants.
Louis Bennett, of New York City, for the United States.

LEARNED HAND, District Judge (after stating the facts as above). Section 4529 of the Revised Statutes, on which the libelants rely, so far as relevant, provides as follows:

"The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens. * * * Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court."

It will be observed that a distinction is made between "coasting" and "foreign" voyages. In the first payment must be made "within two days after the termination of the agreement * * * or at the time the seaman is discharged," while in the second it is "within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged." The section is penal, and the right stricti juris. In the case of foreign voyages, therefore, the seaman must be discharged to get the right to double pay for any period of delay. In the case at bar the libelants, except Hanson, were not discharged till they reached New York. In the case of each they were paid in full at the time of discharge. Hence prima facie the section does not ap-

ply, this being a "foreign voyage." It is not necessary, therefore, to decide whether or not their agreement had terminated.

[1, 2] The libelants argue that the transactions with the master and the consul are the equivalent of a discharge and gave them equal rights, but the evidence scarcely supports that construction. At the first interview, on May 10th, the master says that they demanded their money and a discharge, though the libelants only say that they demanded their money. Both agree that the consul persuaded them to go back and wait. By no possible theory can this be considered as the equivalent of a discharge. On June 4th they repeated their demand for pay, and though the consul again urged them to wait, they insisted on leaving the ship. It does not certainly appear that they requested their discharge a second time and were refused by the consul, and there is good reason to suppose that they did not so regard their "resignation." The letter, so far as we have it, merely refused to be longer responsible for the safety of the ship and demanded the right to go ashore. On June 12th, the master was in funds and offered to pay every one who wanted his money. Although he paid off ten of the crew at the time, none of the libelants was included. Besides, on June 26th, Hanson was discharged, apparently with his own consent. On July 3d, the other 7 agreed to an "extension" of the articles and went back on board.

Considering the penal character of the cause of action, the libelants have failed to show that the consul refused to discharge them on June 4th. If he did, perhaps it would have been a wrong; and if the master persuaded him to do so, possibly the discharge should date from that day. Even so, their recovery would only be of four days' pay; i. e., from June 8th, four days after the discharge, until June 12th, when they were offered pay by the master. So far as I can see, the libelants preferred a rest from the tedium of their labors beneath sunny Mediterranean skies to a discharge. Even were it not so, seven have received a month's bonus, and have given a release which under Revised Statutes, § 4552, is a bar, unless it should be set aside under Revised Statutes, § 4530 (section 8322), for "good cause," of which there is none. Hanson also signed some kind of release on his discharge on June 26th. The circumstances do not appear, except that the consul would not otherwise have paid him. As to him, the right to four days' pay is perhaps free from a release; but he fails because he has not shown that he demanded a discharge on June 4th, for the reasons already given. As his discharge was, so far as appears, quite voluntary, he is not entitled to a month's bonus under Revised Statutes, § 4581, which expressly excludes such a case.

[3] The remainder of the claim is for the difference between the subsistence agreed in the articles and the shore allowances. The "wage scales and working conditions aboard ship" provide for subsistence allowances only "when subsistence is not provided on board," or "when in port and board is not furnished," or "when crew is not boarded aboard the vessel." These men were not sent ashore, but demanded the right to go. The "wage scale" did not apply. There is

not the least evidence that they could not have lived on board, if they chose, under the regular union conditions.

[4] In conclusion, I may add that it is quite apparent that the libelants were well satisfied with what they got, and that they were not in any way overreached or oppressed. They have been paid in full, have got a bonus, have given acquittances, and made no protest. Seamen are wards of the courts, no doubt, and are protected against their own carelessness. The statutes, especially the revision of 1915, show an increased solicitude for their welfare, which courts have no right to view with jealousy. Still they remain in some measure persons' sui juris, and there is neither justice nor policy in aiding them to catch at penalties, where they have suffered no wrongs. The libelants were not helpless or ignorant victims, but alive to their rights. They were satisfied twice with the bargain they had driven, which left them with no ground for complaint.

Libel dismissed, with costs.