230 F.2d 238
 Joseph A. ELLIOTT, Appellant,
v.
PACIFIC FAR EAST LINE, Inc. a corporation, claimant of S.S.
CANADA BEAR, her engines, furniture, tackle and
apparel, etc., Appellee.
PACIFIC FAR EAST LINE, Inc., a corporation, claimant of S.S.
'Canada Bear,' her engines, furniture, tackle and
apparel, etc., Appellant,
v.
Joseph A. ELLIOTT, Appellee.
 No. 14428.
 United States Court of Appeals Ninth Circuit.
 Aug. 5, 1955.
Writ of Certiorari Denied Dec. 5, 1955.
See 76 S.Ct. 199.
 
 David A. Fall, San Pedro, Cal., for appellant.
 Lasher B. Gallagher, san Francisco, Cal., for appellee.
 Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 Elliott is a seaman who signed articles on May 8, 1952, at San Francisco, California, for a voyage not to exceed twelve calendar months on the S.C. 'Canada Bear,' owned by the Pacific Far East Line, Inc., claimant. He was aboard the vessel from that day until June 19. It was found that Elliott went ashore on the evening of June 18 at Yokohama, where after 10:00 p.m., he began to drink. At midnight, according to his story, he went into a cab and from then on did not know anything until he woke up in a called a the next morning. He says he called a representative of claimant that morning and told that he was in the hospital before the vessel sailed. A week later he received $50, which was all he requested, from this representative, and for this sum he receipted. The Bear left Yokohama that day, and the Captain logged Elliott as a deserter on June 19, 1952. This entry was cancelled on the record after the voyage of the Bear ended at San Francisco on June 29. Elliott remained in the hospital, according to his story, until June 30, and was brought back to the United States by another ship of claimant, arriving July 25.
 
 
 2
 On this day, Elliott went to the office of the Far East Line in San Francisco and accepted the statement of someone there that he had no money coming. Thereupon, he went to the office of the Shipping Commissioner in San Francisco, where he received no money on account of wages. He signed off the articles on the same day in the office of the United States Shipping Commission. The notation, 'No wages due,' was on line 37 of the articles. At the same time, Elliott signed a Certificate of Mutual Release addressed to Pacific Far East Line, in which it was stated that there were 'no wages due.' Before Elliott went to the Shipping Commissioner, he made a routine appeal to the union representative concerning $254.04, which it was said the claimant had deducted, and, as Elliott says, the union representative answered that 'he was under the same conclusion I was, he figured the same, that I didn't have any coming to me any more than I thought * * *.' There are two significant bits of testimony in this regard when Elliott himself was on the stand, as follows:
 
 
 3
 'Q. Did you go back to the Pacific Far East Line office in San Francisco at any time within the four days after you were discharged on July 25, 1952, and make any demand for wages?
 
 
 4
 * * * * * *
 
 
 5
 'The Witness: No.'
 
 
 6
 'Q. Did you at any time later contact the Pacific Far East Line with reference to the wages? A. The only time Pacific Far East was contacted again was through you, I think, Mr. Fall.'
 
 
 7
 The next time Pacific Far East Line heard from Elliott, it received a letter from one of his present attorneys (referred to in the excerpt) stating that 'Demand is hereby made upon you for the balance of his wages together with penalty wages of two days for one for each day after June 18, 1952. You have failed to give him a statement of the overtime due to him, but have given him a form W-2 indicating his wages to be $579.24.' This letter was dated April 23, 1953. A few days after, action was commenced for wages and penalty. It was stipulated at the time of the trial before the judge that the sum of $254.04 was deducted on account of hospital bills and other expenses 'due to Mr. Elliott's misconduct.' It was also stipulated that 'it was possible when this voyage was completed and before the seaman signed off for the boat to have sued him for the amount of the hospital bill.'
 
 
 8
 The trial court held that he would set aside the mutual release because he thought there was a misunderstanding upon the part of Elliott, and awarded the sum thus deducted to him. Finding the conditions of the statute had not been complied with,[1] the trial court refused to allow any penalty whatsoever. Both parties appeal from the judgment entered for $254.04.
 
 
 9
 The findings of fact entered by the trial court are sufficient to support the judgment. It is true that the record seems to indicate the whole misunderstanding was caused by the misconduct of the seaman. Likewise, it might have been found that the charge of desertion was substantiated. When the Mutual Release was signed at the time Elliott signed off the articles he had already consulted his union representative about the particular sum that is now involved and allowed to him. The ship's office advised him that no wages were due, apparently on the theory that they had a right to deduct the hospital bill and expenses which Elliott had caused them. The trial court took the position that Elliott was not discharged at Yokohama, but when he signed off at San Francisco. The finding of the trial court was unquestionably correct that there was no demand for back wages at the time of the discharge. Likewise, it was found that there was no appropriate demand for payment of any part of the wages due at the Port of Yokohama except for $50.00 which was paid. The conclusion that no penalty amounts were allowable under the circumstances is well founded.
 
 
 10
 There is considerably more difficulty in affirming the allowance of the $254.04 to Elliott. However, the experienced trial judge made a finding that the seaman had entered the mutual release without complete understanding of the situation. Although it is doubtful that we would have found this, we think there is no sufficient ground for setting aside the finding as clarly erroneous. The judgment is affirmed and the appeal and cross-appeal are dismissed.
 
 
 
 [1]
 46 U.S.C.A. §§ 596, 600, 641, 642