**Angel Tomas ALIER, Plaintiff,**

v.

**SEA LAND SERVICE, INC., Defendant.**

**Civ. No. 75–962.**

United States District Court,
D. Puerto Rico.

Feb. 18, 1979.

**1108**

Ezratty & Sarraga, San Juan, P. R., for plaintiff.

José A. Fusté, Jiménez & Fusté, San Juan, P. R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On or about August 26, 1975, the present complaint was filed by Angel Tomas Alier against Sea Land Service, Inc., claiming that at a given time he was a seaman on board the SS. Ponce belonging to the defendant, Sea Land Service, Inc.; that he was a merchant marine holding a valid United States Merchant Marine document; that on or about December 4, 1974, the plaintiff signed Articles of Engagement at Seattle, Washington, to serve aboard the SS. Ponce; that on or about April 25, 1975, plaintiff was discharged in Singapore from the SS. Ponce by reason of accident and/or illness while in the service of the ship, prior to the termination of the voyage; that pursuant to the Maritime Law a seaman similarly situated was entitled to wages to the end of the voyage; that there had been an arbitrary, willful and unreasonable refusal on the part of Sea Land Service, Inc. to pay the same; that the amount of $2,400.00 was due and owing; and that under Title 46, United States Code, Section 596, double wages as penalty were to be awarded to the plaintiff.

The complaint was answered on October 29, 1975. Sea Land Service, Inc. admitted all the allegations of the complaint except allegations 13 and 15, which go to the willful, unreasonable and arbitrary act mentioned before and to the availability of double wages as a matter of law. Sea Land Service, Inc. raised as affirmative defenses the fact that it had never refused to unreasonably, willfully or arbitrarily paying the wages referred to in the complaint; that on October 16, 1975, a letter was addressed to Harry A. Ezratty, Esq., in relation to the case by Sea Land Service, Inc., whereby monies in the amount of $2,634.05 were sent to Mr. Ezratty, Esq., as attorney for the plaintiff, and a copy of the letter which covered the check was marked as Exhibit A to the answer to the complaint, the same being self explanatory as to the reasons for the delay in sending the monies. Said Exhibit A is complemented by the exhibits attached to the motion for summary judgment filed by the plaintiff. Said motion for summary judgment and the opposition thereto filed by the defendant are the object of this opinion and order. We advance that the motion for summary judgment filed by the plaintiff is denied for the reasons that will be expounded herein and that defendant's motion for judgment under the pleadings requesting the dismissal of the complaint in light of the payment made, dated October 29, 1975, is granted.

I.

An examination of all documents on file show, as we have advanced, that the motion for summary judgment filed by Angel Tomas Alier, plaintiff in this action, is not well taken, and that as a matter of law the penalty contained in Title 46, United States Code, Section 596 is not available to him. Since this is a question of first impression in this District and the case law is not abundant on the point, we will discuss the matter at length since in this District the admiralty litigation is abundant.

First of all we will dispose of the question of what amount of wages a seaman is entitled to after he becomes ill or injured while sailing on board an American Flag ship, as happens in the present case. In the case of domestic or coastwise traffic the rule established by the case law, which is hornbook law, is to the effect that when a seaman suffers an accident he is to be paid his wages up and until the moment he suffered the accident. These wages are known as earned wages. Once he is discharged from the vessel he is to be paid unearned wages up and until the termination of his contract of employment, unless otherwise provided by collective bargaining agreement. If the seaman in question is engaged in foreign trade, as happens in this particular case, and he is injured or becomes ill during the course of the voyage and is discharged before the termination of the same, he is entitled to the wages earned up to the moment of discharge, and thereafter he is also entitled to unearned wages for the period of the voyage in question.

An examination of the record shows that there is no doubt as to the fact that Angel Tomas Alier was paid for earned wages when he was discharged from the SS. Ponce at Singapore. What is in issue before this Court is his right to collect the unearned wages for the period of the voyage and whether Sea Land Service, Inc.'s failure to pay them up and until December 16, 1975, constitutes a violation or falls within the meaning of the double penalty imposed by Title 46, United States Code, Section 596.

A superficial examination of the statute in question will show that the penalty provision referred to herein is intended to protect seamen. The double wage statutory provision contained in Title 46, United States Code, Sections 596 and 597, did not have its inception in the Seamen's Act of 1915. As early as 1790 (Act of July 20, 1790, 1 Stat. 133) Congress, in legislating for the benefit of seamen, provided that masters or owners of vessels making voyages from Atlantic ports to Pacific ports, or vice versa, should pay to every seaman his wages within two days after the termination of the agreement or at the time of the seaman's discharge. In the case of vessels in foreign trade the wages were to be paid within three days after the delivery of the cargo or within five days after the seaman's discharge. In all cases at the time of the seaman's discharge, one-fourth of the wages due him were to be paid. In the event that the master or owner neglected or refused to pay the wages due, they were to be liable to pay seamen affected a sum not exceeding the amount of two days' pay for each day, but not exceeding ten days, during which the payment was delayed.

In the Year 1898 and by virtue of the Act of December 21, 1898, 30 Stat. 756, Sec. 4, the statute was amended so that the sum due for neglecting or refusing to pay as reduced to one day's pay for each day's delay, but not exceeding ten days.

In 1915, the law was amended again and the penalty was changed to two days' pay for each day of delay. The 1915 amendment dropped the limitation period of ten days. That is why the double wage provision is often referred to in maritime circles as a two-for-one penalty, double wages, penalty wages, etc. See the Opinion of Justice Brown in *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), where the United States Supreme Court recognized the existence of the traditional remedies afforded to seamen, the first leading case involving the matter in this Century.

The present statute regarding double wages provides that a master or owner of any vessel which makes coastwise voyages

must pay every seaman his wages within two days after the shipping agreement is terminated or at the time that the seaman is discharged, whichever occurs first. For vessels in the foreign trade or in the inter-coastal service (from coast to coast through the Panama Canal) payment of wages must be made within twenty-four hours after the cargo has been discharged or within four days after the seaman has been discharged, whichever occurs first. In every case the seaman, at the time of his discharge, is entitled to be paid one-third of the balance of the wages due him. The statute provides the penalty for the non-payment. In so doing the statute spells out that every master or owner who refuses or neglects to make these payments without sufficient cause must pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the period which we have mentioned above and which the law contemplates. The sum is recoverable as wages before a court in a case which can be filed invoking the admiralty and maritime jurisdiction of the United States codified in Title 28, United States Code, Section 1333. The statute, of course, does not have any application by its own terms to seamen who are entitled to share in the profits of a cruise or voyage or to those engaged in fishing or whaling vessels or in yachts. Title 46, United States Code, Section 596.

 The statute can be considered as one which awards double wages in the nature of compensation or which awards compensation in the nature of a penalty. In *Cox v. Lykes Bros.*, 237 N.Y. 376, 143 N.E. 226, 1924 AMC 655 (1924), it was held that for the purpose of determining whether the state court had jurisdiction under the saving-to-suitors clause obtained in Title 28, United States Code, Section 1333, the statute was not to be taken to provide for a penalty. Notwithstanding, in *Buckley v. Oceanic SS. Co.*, 5 F.2d 545 (9 Cir. 1925), the holding was that the statute was a penalty intended as compensation to seamen rather than punishment of the master. The reference in Section 596 that payment is to be recoverable as wages does not appear to be decisive on the question of whether Congress intended compensation or penalty. Notwithstanding, this Court is in agreement with the proposition that the essential spirit and purpose of the statute is to financially punish the vessel, its owner and/or its master, as the case may be, for the neglectful failure to pay wages. This can be plainly seen if we consider that in a given case the sum to be paid may be far out of proportion to the actual unpaid wages involved. Although there has been no case law from the Supreme Court defining whether this Section means compensation or penalty, it is regarded as penalty within the maritime industry. *Petterson v. United States*, 274 F. 1000 (D.C.N.Y.1921).

## II.

 At this point it should be made clear that the statute, Title 46, United States Code, Section 596, applies only to earned wages and does not apply to unearned wages to which the seaman is entitled after his discharge from the vessel. There is indeed a difference between earned wages, which were paid to Angel Tomas Alier, plaintiff in this action, and unearned wages, which were the object of this suit against Sea Land Service, Inc. Earned wages paid to Angel Tomas Alier when he was discharged from the vessel would be those that he was entitled to as a seaman accrued by the nature of his work up to the moment that he was discharged from the vessel. It is to those earned wages that Section 596 applies if they are not paid within the time limit provided by law. Unearned wages, often referred to as honorary wages, to which definitely the seaman is entitled, are not covered by Section 596 since they are provided by the General Maritime Law of the United States to help out the seaman. These wages, unearned or honorary, as they may be called, are in the nature of maintenance and cure, and it is the ancient duty of the vessel and shipowner to provide the sick and injured seaman with said maintenance and cure and honorary wages from the contract of employment and the particular relationship ex-

isting between the seaman and his vessel. It does not rest upon whether the wages were actually earned or whether the seaman has to work to receive his maintenance pay. It does not rest either upon negligence or culpability on the part of the owner or the master, and it is not restricted to those instances where the seaman's employment is the cause of the injury or illness. *The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); *Warren v. United States of America,* 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951); *Farrell v. United States of America,* 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Vella v. Ford Motor Co.,* 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975).

▮ While there may be a requirement of causal connection where there has been a traumatic shipboard injury, there obviously cannot be such a requirement with respect to an illness which manifests itself during service. Therefore, a finding that the seaman's injury was not due to the negligence of the shipowner or to a vessel's unseaworthiness, should not be controlling on the issue of maintenance and cure and honorary wages or unearned wages, which are part of maintenance and cure. A suit for maintenance and cure and honorary wages is completely separate from a Jones Act cause of action under Title 46, United States Code, Section 688. The recovery for wages (unearned or honorary) and maintenance and cure is made of right and is not predicated upon the culpability of the master, owner or vessel. It can be thus said that maintenance and cure, as well as unearned or honorary wages, are in a way part compensation for the disability of damages suffered. They are part of the shipowner's duty or obligation to provide care of the sick or injured seaman on board a given vessel during the course of the voyage or ashore when required by law.

The contractual aspect of maintenance and cure is perhaps emphasized when we consider that such distinguished admiralty justices as Justice Story and Lord Stowell regarded maintenance and cure as wages in another form. Justice Story was of the firm opinion that a claim for maintenance and cure was in the nature of additional wages (unearned or honorary) during the period of sickness. See, among others, the following: *Calmar SS. Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); *Cortes v. Baltimore Insular Lines,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); *Roberts v. The SS. Argentina,* 1964 A.M.C. 1696, aff'd 359 F.2d 430 (2 Cir. 1966); *United Fruit Co. v. Sumrall,* 273 F.2d 735 (5 Cir. 1960); *Hudspeth v. Atlantic and Gulf Stevedores, Inc.,* 266 F.Supp. 937 (DC Wash. 1937); *The Wanderer,* 20 F. 140 (CC. La. 1884); *Harden v. Gordon,* Fed. Case # 6047 (CC. Me.1823); *The Madonna D'Idra,* 1 Dodson 37; *Sims v. Marine Catering Service, Inc.,* 217 F.Supp. 511 (DC La.1963); *Mauri v. The SS. Sag Harbor,* 227 F.Supp. 661 (DC Md.1964), citing the text in *Harden v. Gordon,* supra.

III.

▮ Generally a seaman injured or fálling sick in the service of a ship, as we have stated previously, is entitled to wages to the end of the voyage. When a seaman is taken ill or requires hospitalization so that he must leave the service of the ship at one of the ports, he is discharged for hospitalization and medical treatment and is paid wages to the date he leaves the ship. This was done in the case of Angel Tomas Alier. The date that the seaman leaves the ship, either upon his discharge or at the end of the voyage if no discharge occurs before that time, fixes the time of the operation of the statute, Title 46, United States Code, Section 596. Payment of earned wages at the time of the discharge establishes the performance of the master's or owner's statutory duty to the seaman and, therefore, the seaman is not entitled to the double wage penalty for wages which may be due him subsequently to the date of the discharge, as happens in the present case. This is so because unearned or honorary wages are those wages which accrue on behalf of a seaman after he is discharged from the ship, which are in the nature of maintenance and cure. Neither would a

seaman be entitled to the penalty for the shipowner's failure to pay maintenance and cure as such for the period subsequent to his discharge. The double wage penalty is to be applied only to earned wages and not to unearned or honorary wages. To illustrate this point we will cite the case law which is available and which is not abundant. In the case of *Yoffe v. Calmar SS. Corp.,* 23 F.Supp. 629 (DC Cal.1938), the District Court for the Northern District of California, Southern Division, was posed with the question now before this Court. Judge Roche decided the question squarely in that particular case brought by a seaman to recover wages and double wages accruing during an alleged period of nonpayment after the termination of the voyage, specifically under Title 46, United States Code, Section 596, for double wages. In that particular case it was alleged that the plaintiff had signed on the SS. Vermer for a voyage from Baltimore, Maryland, to the Pacific Coast and back to Baltimore. It was also alleged that the seaman fell ill in the service of the vessel without his fault and was therefore forced to leave the ship on January 20, 1938, at the port of San Francisco, California, where he entered the United States Marine Hospital. The complaint alleged that wages were paid to and including January 20, 1938, but that no wages were paid beyond that date. The facts are similar to those in the present case, that is, a seaman joined a vessel; he became ill without his fault; he was discharged before the voyage finished; he was paid up and until the date of the discharge and his honorary wages which accrued thereafter were not paid although they were demanded. The Court made an analysis of Section 596 and determined that indeed there was a duty of promised payment imposed upon the master or owner by the section, arising on coastwise voyages at the time that the seaman is discharged or at the time of the termination of the articles; on foreign or intercoastal voyages at the time of the seaman's discharge or at the time the cargo is discharged. It was also stated by the Court that in each case the statute operated at the time the seaman left the ship, either upon

his discharge or at the end of the voyage, if no discharge occurred before that time. The Court cited from *The Cubadist,* 252 F. 658–659, where it is said at page 660:

"A careful reading of Section 4529 (46 U.S.C. 596) will show that Congress intended that the seamen should be paid their wages in full <u>when their term of service is ended, either by performance or discharge.</u>" (The underscored language appears in italics in Judge Roche's opinion. Judge Roche supplied the italics himself).

The Court went further to state that since the plaintiff, Yoffe, had been paid for earned wages up to the time of his discharge on January 20, 1938, the shipowner's liability under the statute had to be determined as of that time, that is, as of the time of discharge. As the master or owner fulfilled the obligation of prompt payment as of the time of discharge, that is, January 20, 1938, Section 596 imposed no penalty for failure to make immediate payment when the voyage ended. This was so, in Judge Roche's words, regardless of whether the cause of the seaman's leaving the ship was such as to entitle him to wages to the end of the voyage, for he had been discharged during the course of the voyage. Since full payment was made up to the time of the discharge, the shipowner had complied with his statutory duty and it followed that the plaintiff was not entitled to the double pay, penalty or compensation, as the case may be, under Title 46, United States Code, Section 596. *Halvorsen v. United States,* 284 F. 285, cited by Judge Roche in his Opinion, Decision of the United States District Court for the Western District of Washington, Northern Division, 1922.

If we examine the situation at bar in light of the *Yoffe* case, supra, we will see that Angel Tomas Alier's claim for unearned or honorary wages does not fall within the purview of Title 46, United States Code, Section 596.

In the case of *Davila v. The SS. Vercharmian,* 247 F.Supp. 617 (DC Va.1965), affirmed 372 F.2d 93 (4 Cir. 1967), the same principle of law was followed. Although

the circumstances were not exactly similar to the ones at bar and do not fall within the four corners of the previous case cited, the principle is illustrated. *Davila* was in the status of a detained seaman when taken to a hospital in Norfolk. He admitted that a representative of the British Consul visited him at the hospital and advised him that he had his passport and his wages. The Consular Officer asked Davila if he wanted any money, and was advised by Davila himself to give him $5.00 or $6.00 for cigarettes. The exact amount left with Davila was $5.60. The transaction took place within five or six days after Davila had entered the hospital. On September 9, 1960, when Davila was discharged from the hospital, as he was found fit for travel, the balance of his earned wages was paid to him through his attorney. The Court understood that under the circumstances there could be no right to claim for double wages under Title 46, United States Code, Section 596. This can be plainly seen from Judge Hoffman's decision and from the very short decision by the United States Court of Appeals for the Fourth Circuit in affirming the judgment, where, at page 94 of 372 F.2d the Court of Appeals states *per curiam* in the appeal of Judge Hoffman's dismissal of the waiting-time claim for delay in the payment of wages under Title 46, United States Code, Sections 596 and 597, that the appeal was without merit. See also *Rallatos v. Greek SS. Matrozos,* 240 F.Supp. 342 (DC Va. 1964), Hoffman, J.

To further illustrate the point that only earned wages and not unearned or honorary wages fall within the meaning of Title 46, United States Code, Section 596, we should comment on Exhibit E to plaintiff's Motion for Summary Judgment. Exhibit E is, properly speaking, Sections 14, 15 and 16 of the Collective Bargaining Agreement which covered Angel Tomas Alier as a seaman. Section 14(d) states as follows:

"(d) Where a seaman leaves the vessel due to illness or injury and such illness or injury has been known prior to his leaving, he shall receive a full statement of his account showing wages due him. Where time does not permit the statement being given to the man before he leaves the vessel or before the vessel's departure, the Master shall promptly advise the Company Agent and the home office of the status of the man's account at the time he left the vessel.

Thereafter, when the seaman presents himself to the Agent at the Port where he left the vessel, the maximum allowable payments shall be made to him by that Agent.

When the seaman presents his claim for wages to the Agent or office of the Company at the port of engagement or to the home office of the company, he shall receive payment as promptly as possible.

Failure to pay the seaman wages within 72 hours exclusive of Saturdays, Sundays and Holidays after presentation of his claim shall entitle the seaman to $8.00 per day until the full wages due the man at the time he left the vessel are paid."

Said Section obviously refers to earned wages. A simple reading of the same demonstrates that that is the case! It does not take too much to realize this as a fact, especially when the Section speaks in terms of giving the seaman, when he leaves the vessel, a full statement of his account showing the wages due to him; giving the seaman a status of account at the time he left the vessel; giving the right to the seaman to present himself to the agents at the port where he left the vessel; and giving the right to the seaman to an $8.00 penalty per day until the full wages due to the seaman at the time he left the vessel are paid. Obviously this refers to earned wages and not to unearned or honorary wages as happens in the case of Angel Tomas Alier.

IV.

An aspect of the question of law involved to which the parties devoted time in the discussion by way of memoranda and which the Court understands is to be considered, is twofold. One goes to the alleged unreasonableness on the part of Sea Land Service, Inc., and the other one goes to the timelessness in which this action was brought.

In the first place we will examine the reasonableness or unreasonableness doctrine under Section 596. The evident purpose of the double-wage provision contained in Title 46, United States Code, Section 596 is to secure prompt payment of seamen's wages and thus to protect them from the consequence of arbitrary and unscrupulous actions of shipowners and masters. *Collie v. Fergusson*, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696 (1930). As was said in *Glandzis v. Callinicos*, 140 F.2d 111 (2 Cir. 1944) it is not every refusal which grounds the penalty. The statute makes the penalty applicable when there is a refusal or neglect to make the payment without sufficient cause. Without doubt the question of sufficient cause is the most important element of this statute and that theme predominates in virtually every litigation involving the double-wage penalty. Thus, in those cases in which the double-wage penalty is of application—and this case is not one of them—it is virtually impossible to decide the issue on a summary judgment motion since there always exists in controversy the fact of whether the neglect or the refusal was without sufficient cause. There always exists then a conflict as to material facts which impede the granting of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The refusal or neglect which the law contemplates without sufficient cause connotes either conduct which is in some sense arbitrary or willful, or at least a failure not attributable to impossibility of payment. *Collie v. Fergusson*, supra; *Watler v. The M/V Sea Lane*, 232 F.Supp. 387 (DC Fla.1964). The phrase "without sufficient cause, etc." contained in the law, must be taken to mean more than merely valid defenses to a wage claim. Its meaning, in effect, is a willful, unreasonable and arbitrary attitude on the part of the shipowner in refusing to pay earned wages to the seaman. It may be a high handed or capricious action, although not necessarily so. "Without sufficient cause" has been characterized by admiralty courts as arbitrary, unwarranted, unjust and unreasonable conduct. *Glandzis v. Callinicos*, supra. The presence of good faith or moral justification for refusal to pay undoubtedly has considerable effect in the determination of whether the master or shipowner was or was not "without sufficient cause". Generally, where the refusal or failure to pay wages results from an honest course of events arising from the matter in dispute, which is the wages, a dispute about which honest men are apt to differ, the courts are loathe to declare a penalty when later one of the parties to the controversy has been proved wrong in relation to earned wages. *Rodriquez v. Gerontas Compañia de Navegacion, S.A.*, 150 F.Supp. 715 (DC NY 1957), affd. 256 F.2d 582 (2 Cir. 1958). Where the owner has acted in a reasonable manner without any showing of arbitrariness, unjustness, and where the facts and circumstances surrounding the wage demands are susceptible to an honest doubt either as to the justness of the seaman's demands or as to the justness of the owner's refusal, it cannot be said that the refusal is without sufficient cause. *Assimacoupoulos v. Kulukundis Shipping Co.*, 44 F.Supp. 752 (DC NY 1942); *Livanos v. Pateras*, 192 F.2d 319 (4 Cir. 1951), cert. den. 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352.

Lack of good faith on the part of the seaman has also been taken into consideration in determining a sufficient cause. In brief, the entrapment of the seaman or the taking of advantage by him of the owner of the vessel or a technical lapse in paying up, should not be made the basis for a decree of double wages. *The Easterner*, 47 F.2d 605 (4 Cir. 1931); *Elliott v. Pacific Far East Line, Inc.*, 230 F.2d 238 (9 Cir. 1955); *Schwark v. SS. Rio Macareo*, 249 F.Supp. 375 (DC La.1966).

The second aspect under this part of this Opinion and Order is on the issue of double wages and pertains to laches in bringing the suit.

The rule of laches may be applied whenever a seaman unduly delays in bringing a suit for the double-wage penalty after the payment of wages has been denied him. Of course, the denial can be expressed or implied. A considerable delay

in time before bringing suit may create the inference that the seaman has deliberately delayed his action for the purpose of accruing a maximum amount of penalty time. Under such circumstances this act may create doubt as to the good faith of the litigants. Diligence in bringing suit is a factor to be reckoned with if the litigant is to successfully receive the double-wage penalty. A delay of eight months before bringing a wage suit in which double penalty was sought was thought to constitute laches in the case of *The New Jersey*, 31 F.2d 116 (5 Cir. 1928); *The Morning Star*, 1 F.2d 410 (DC Wash.1924); *Gonzales v. The Archangelos*, 135 F.Supp. 663, aff'd 245 F.2d 412 (4 Cir. 1957). Of course, be it remembered that the burden of proof in laches and prejudice is on the defendant and in some cases the term of two years has been considered reasonable. *Haychuck v. So. Atlantic SS. Line, Inc.*, 127 F.Supp. 49 (DC Pa. 1954).

V.

 Going to the brief in opposition to defendant's motion for judgment on the pleadings, subscribed by plaintiff's attorneys, we find good faith on the part of Sea Land Service, Inc. Plaintiff's counsel states that maintenance benefits were being paid regularly to the plaintiff but that his unearned wages had not been paid. If it had been Sea Land's intention to violate the law they would have paid neither of the two. If they wanted to be arbitrary they would have been arbitrary all the way and they would have even denied the basic maintenance benefits. It is an admitted fact that maintenance benefits were received.

As to the conversations had with Mr. Abello of Insurance Adjusters and Appraisers, Inc., and with Mr. George Masteller, Sea Land's Senior Claims Manager, while the attorneys for both parties to this suit visited the SS. Wacosta, another vessel belonging to Sea Land Service, Inc. in the port of Elizabeth, New Jersey, some time ago, we will say that the matter is not properly brought before the Court since it is factual matter which was the object of affidavits and not of statements in a brief. What happened and what transpired on board the SS. Wacosta between Mr. George Masteller, Mr. Harry A. Ezratty, representing the plaintiff, and Mr. Jose Antonio Fuste, representing the defendant, regarding Mr. Alier's wages, is not properly, completely and accurately described in the brief in opposition referred to herein. The burden was upon the plaintiff to show this fact to be true in the proper manner, and the plaintiff failed to carry said burden forward.

Lastly, we recapitulate by saying that the motion for summary judgment filed by the plaintiff should be denied basically because of the fact that Section 596 of Title 46, of the United States Code refers to earned wages and not to unearned wages as happens in the present case. In any event, it is the ruling of this Court that the correspondence on file shows that Sea Land Service, Inc. did not act capriciously, arbitrarily, unjustly and with intent to deceive in paying out the unearned or honorary wages to Angel Tomas Alier. The motion for summary judgment is hereby denied as aforementioned and defendant's motion for judgment on the pleadings dismissing the complaint filed herein on account of the payment made, is hereby granted.