Richard J. CHRETIEN

v.

EXXON COMPANY, U.S.A.

No. C–85–231–L.

United States District Court,
D. New Hampshire.

May 2, 1988.

Richard J. Chretien, Houston, Tex., pro se.

Cooper, Hall, Whittum & Shillaber, P.C. by Daniel J. Harkinson, Rochester, N.H., for plaintiff.

Hamblett and Kerrigan, P.A. by John V. Dwyer, Jr., Nashua, N.H., John M. Baumann, Jr., Exxon Co., U.S.A., Houston, Tex., for defendant.

## MEMORANDUM OPINION

LOUGHLIN, District Judge.

This is a "seaman's suit" for wages and improper attachment of thrift fund monies pursuant to 28 U.S.C. § 1916. The court's jurisdiction is based on 28 U.S.C. § 1333. The plaintiff is endeavoring to recoup funds which he asserts were wrongfully deducted from his wages. Additionally, the plaintiff wants to recover penalties assessed against the defendant as a result of the allegedly wrongful wage deduction.

The plaintiff is fifty-four (54) years of age and a resident of the State of New Hampshire. He is currently employed by the defendant corporation and has been so employed for approximately twenty-three years. At the time of the incident in issue, the plaintiff was serving as a Fleet Officer in the capacity of First Assistant Engineer for Exxon Shipping Company.

In the summer of 1982, the plaintiff was "invited" to attend a management conference in Houston, Texas, which was conducted by the defendant. On July 21, 1982 the plaintiff was advanced $700.00 by the defendant in order to cover any expenses which the plaintiff might incur as a result of his attendance at the conference. Although the plaintiff did not remember the specifics of the conference, he recalled attending.

As part of its advance funding policy, the defendant would provide funding for certain employees to attend schools and management conferences. The monies provided for employee expenses would not be recouped by the defendant provided that the employees receiving the funds completed and submitted to the defendant an employee expense record, which accounted for expenditures of funds advanced.

Upon completion of the management conference attended by the plaintiff during the summer of 1982, the plaintiff was required under the defendant's advance funding policy, to submit an employee expense record so that the defendant would not attempt recovery of the funds advanced. Although the plaintiff did not specifically recall submitting an employee expense record in reference to the conference in issue, he noted that it was his practice to complete the record and submit it shortly after attending company sponsored conferences.

On March 29, 1983 the defendant's payroll supervisor, Terry V. Huffstickler, forwarded a letter to the plaintiff notifying him that the defendant had not received an employee expense report concerning the expenditure of funds advanced for the management conference attended by the plaintiff during the summer of 1982.

Although the plaintiff did not respond to the March 29, 1983 letter in writing, he acknowledged receipt of the letter and vaguely recalled telephoning Mr. Huffstickler's secretary concerning the allegedly unsubmitted expense report.

In keeping with his normal employment schedule of two months aboard ship and two months off ship, the plaintiff boarded the defendant's steam vessel the Exxon Boston on April 23, 1983. On that date, the Boston commenced a voyage from Baytown, Texas, a port located in the Gulf of Mexico, to an oil platform known as the "Hondo" platform, located off the southern California coast. As part of the voyage, the Boston journeyed through the Panama Canal and at some point, docked in Los Angeles, California. The entire voyage involved two (2) trips from Baytown to the Hondo oil platform and eventually back to Baytown.

The plaintiff's voyage on the Exxon Boston terminated on June 30, 1983. During the voyage, the defendant forwarded another letter concerning the absence of an expense report pertaining to the summer conference of 1982. This particular correspondence was dated April 29, 1983 and some question existed as to the plaintiff's receipt of the letter since he was at sea during the time of mailing.

While plaintiff was still at sea, the defendant deducted $700.00 from the plaintiff's wages on May 14, 1983. This deduction was for the purpose of recouping the $700.00 advanced to the plaintiff for the management conference of 1982. The deduction was also in accordance with the notification of responsive action detailed in the defendant's letters of March 29, 1983 and April 29, 1983.

As a result of the deduction from wages, the plaintiff commenced this action on April 8, 1985 alleging wrongful attachment of thrift fund monies, and wrongful withholding of seaman's wages.

## A. *Sufficient Cause*

Since the plaintiff's allegations concerning the attachment of thrift fund moneys has been resolved, the remaining issue before this court is the allegation of wrongful withholding and deduction of the plaintiff's wages in violation of 46 U.S.C. § 596. This statute (recodified as § 10313) provides:

The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman was been discharged whichever first happens and in all cases, the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days pay for each and every day during which payment is delayed beyond the respective periods which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise of voyage. This section shall not apply to fishing or whaling vessels or yachts.

*Id.*

This court has twice ruled that the statute is applicable to the factual circumstances of the case, insofar as the vessel Exxon Boston was involved in trade between the Atlantic and Pacific coasts during the period of wage deduction. *See Order on Motion for Partial Summary Judgment* (March 15, 1988); *Order on Motion for Reconsideration* (April 7, 1988).

Therefore, the remaining issues before this court pertain to whether or not the defendant failed to pay the plaintiff wages in violation of the statute, and if so, whether sufficient cause existed to withhold wages. The court must also determine

whether the equitable doctrine of laches bars recovery by the plaintiff.

There is little question that the attempted recoupment of funds advanced for conference expense purposes was by means of deducting the amount advanced from the plaintiff's wages. *Exhibit* No. 1. Therefore, the court must address the sufficiency of cause, if any, for the wage deduction.

A thorough analysis of the "double wage" penalty for improper withholding is found in the case of *Alier v. Sea Land Service, Inc.*, 465 F.Supp. 1106 (D.P.R. 1979). As is pointed out in *Alier*, the statute was originally enacted and several times amended, to provide for the protection of seamen who are considered wards of the admiralty. *Id.* at 1110. It was intended as a means of securing "prompt payment of Seaman's wages" and to protect seaman "from the consequences of arbitrary and unscrupulous actions of shipowners and masters." *Id.* at 1114.

It is axiomatic, as recognized in *Alier*, that a determination of critical importance in applying the statute is that of "sufficient cause." *Collie v. Fergusson*, 281 U.S. 52, 55–56, 50 S.Ct. 189, 191, 74 L.Ed. 696 (1930). In considering the sufficiency of cause for withholding a seaman's wages, courts should consider good faith or moral justification on the part of the shipowner in withholding wages. *Breslin v. Maritime Overseas Corp.*, 662 F.Supp. 195, 197 (S.D. N.Y.1987). Wrongful withholding alone does not establish sufficient cause, *Vinieris v. Byzantine Maritime Corp.*, 731 F.2d 1061, 1063 (2nd Cir.1984). The withholding of wages must also be "arbitrary, unwarranted, unreasonable, unjust, and willful." *Id., citing with approval, Collie v. Fergusson*, 281 U.S. 52, 50 S.Ct. 189. In addition to considering the motivating factors on behalf of the ship owners, the court may also consider good faith (or lack thereof) on behalf of the seaman. *Alier*, 465 F.Supp. at 1114.

With this as background, the court considers the evidence presented. It is clear from the testimony and documentation at trial that the defendant deducted $700.00 from the wages of the plaintiff on May 14, 1983. It is virtually uncontested that the funds were withheld in order to offset the funds advanced to the plaintiff to supplement expenditures incurred at the July, 1982 conference.

Although the plaintiff's attendance at the July, 1982 conference was undocumented according to the defendant, there was evidence which tended to confirm the plaintiff's attendance. The defendant's Fleet Managing Supervisor, Robert McCormack, recalled seeing the plaintiff at the conference and having some private conversations with him.

A highly contested issue is whether or not the plaintiff, upon completion of the management conference, submitted an expense report which accounted for the use of the advanced funds. The plaintiff testified that he ordinarily submitted expense reports within approximately two (2) weeks of attending a conference. However, the plaintiff could not recall having submitted the report in question.

Terry Huffstickler, defendant's payroll supervisor, testified to the failure of an expense report being submitted to his office. Huffstickler further testified that notice of the delinquent expense report was sent from his office within sixty (60) days of the cash advance and was intended to encourage the plaintiff to submit a report. Additionally, he testified that notices continued to be generated by his office at the rate of one (1) every month. Once the delinquency reached the 180 day mark, a personal letter was forwarded to the plaintiff notifying him of the possibility that the unaccounted for cash advance could be deducted from the plaintiff's payroll. Although the defendant did not produce every letter and notice which Huffstickler testified was generated due to the plaintiff's alleged failure to submit an expense report, the defendant did produce personal letters from Huffstickler to the plaintiff concerning the cash advance, dated March 29, 1983 and April 29, 1983.

The evidence indicated that the notices and letters generated by Huffstickler's office were sent to "Fleet Manning" Department, which in turn was responsible for

forwarding the information to the plaintiff. There is also evidence which indicates that the plaintiff was at sea during the period in which some of the notices were sent, and during the time in which the defendant deducted the $700.00 cash advance from the plaintiff's payroll.

The plaintiff testified that he had indeed received notice from the defendant of his failure to submit an expense account for funds advanced during the July, 1982 conference. In fact, the plaintiff vaguely recalled contacting Huffstickler's secretary by telephone, concerning the expense report. The plaintiff testified that he never sent correspondence to the defendant concerning the expense report. The plaintiff also testified that he did not respond to the notices because he had some familiarity with the law concerning seaman's wages, and believed any alleged attachment of wages to be unlawful.

The plaintiff did not contest the May 14, 1983 withholding prior to filing this action on April 8, 1985. In reviewing the plaintiff's testimony as a whole, the court finds numerous inconsistencies and contradictions. The plaintiff's memory of much of the pertinent factual data concerning this action is dubious.

■ Since the plaintiff met his burden of proving that wages were withheld, the defendant bore the burden of proof as to the sufficiency of cause for the withholding. *Arguelles v. U.S. Bulk Carriers, Inc.*, 408 F.2d 1065, 1070 (4th Cir.1969). In reviewing the evidence, this court finds that the defendant has met its burden.

■ The case law interpreting the sufficient cause element of 46 U.S.C. § 596, along with the statute's legislative history, indicates an intent on the part of Congress to protect seamen from the arbitrary and capricious withholding of wages by shipowners or masters. In the present case, there is lack of evidence of an arbitrary, unjust or unfounded withholding. *See Collie v. Fergusson, supra.*

Instead, there was a conscientious effort on behalf of the defendant to systematically notify the plaintiff of his failure to submit an expense report concerning the July, 1982 management conference. The defendant waited ten (10) months (interdicted by much correspondence which plaintiff admits having received in part) before deducting the cash advance from the plaintiff's wages.

■ It is the plaintiff's contention that because the withholding was intended to offset a debt owed the defendant, the withholding was without sufficient cause as a matter of law. The plaintiff relies on the case of *Isbrandtsen Company v. Johnson*, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952), in which the Court held that a ship owner could not make deductions from, or setoffs against a seaman's wages, except under those circumstances provided by the Congress. *Id.* at 788–89, 72 S.Ct. at 1017. Although recognizing the importance of the *Isbrandtsen* decision, this court finds plaintiff's argument unpersuasive. In view of the case law concerning the statute in issue, the court does not interpret *Isbrandtsen* as mandating that an attempted set-off against seaman's wages for a purpose other than those delineated by Congress be deemed, as a matter of law, a withholding without sufficient cause.

The evidence presented at trial did not depict the withholding of wages as an arbitrary or unjust act on behalf of the defendant. The evidence depicted an employer advancing funds, which if accounted for, would not have been recouped at all. The evidence further depicted the conscientious efforts of the defendant in notifying the plaintiff of the necessity to submit an expense report, so that the plaintiff would not have to remit the funds advanced.

The evidence tends to show that it was the plaintiff who was willful and arbitrary in failing to respond to the efforts of the defendant with respect to the delinquent expense account.

The court does not find the defendant's withholding to have been without sufficient cause as that element is required by 46 U.S.C. § 596.

Due to the particular factual circumstances comprising this litigation, the court

will additionally examine the defendant's asserted defense of laches.

### B. *Laches*

It is a well settled principle of law that the equitable doctrine of laches applies to admiralty and maritime controversies. *See Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956). *Puerto Rican–American Insurance Company v. Benjamin Shipping Company*, 829 F.2d 281, 283 (1st Cir.1987) [hereinafter PRA–IC]. Although the statutes of limitations applying to actions in admiralty are to be considered in reviewing an asserted defense of laches, the limiting statutory period is by no means controlling.

> The analogous state statute of limitations merely determines where the burden of proof falls if a plaintiff files a complaint within the analogous statutory period the burden of proving unreasonable delay and prejudice falls on the defendant. *Azalea Fleet [v. Dreyfus Supply and Machinery Corp.]*, 782 F.2d [1455] at 1459 [(8th Cir.1986)]. If a plaintiff files after the statutory period has expired, the burden shifts and a presumption of laches is created. *Ramos v. Continental Ins. Co.*, 493 F.2d 329, 332 (1st Cir.1974).

*PRA–IC*, 829 F.2d at 283. An application of this equitable doctrine is within the "sound discretion" of the district court. *Id.*

In determining whether the application of the laches doctrine is proper in a particular case, the court must consider several factors. The factors accorded considerable weight in such an analysis include lack of diligence by the party against whom the defense is asserted, prejudice to the party asserting the defense and reasons for the delay in commencing the action. *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961).

Depending upon the circumstances of each action in which this defense is asserted, delays as short as eight (8) months may constitute unreasonable delay favoring a laches defense, while a delay of up to two (2) years may be considered reasonable, barring a laches defense. *See The New Jersey*, 31 F.2d 116 (5th Cir.1929); *Haychuck v. So. Atlantic SS. Line, Inc.*, 127 F.Supp. 49 (D.C.Pa.1954).

■ In determining whether delay in commencing an action is unreasonable, the court must be circumspect of an inference that a seaman has deliberately delayed his action for the purpose of accruing a maximum amount of penalty time. *Alier*, 465 F.Supp. at 1115–16.

In turning to the factual background of this case, it is uncontested that the defendant deducted the monies on May 14, 1983. The plaintiff was fully cognizant of the deduction as it was reported on his pay stub which accompanied the payment in issue. The plaintiff made no claims upon the defendant for remittance of the deducted funds. The first instance in which the defendant was notified of the plaintiff's disapproval of the deduction was when it received notice of the complaint filed in this action on April 8, 1985.

An examination of the evidence presented before this court fails to reveal any explanations for the delay on the plaintiff's part in commencing this action. The delay consisted of nearly two (2) years of unexplained inaction on behalf of the plaintiff. Although a two (2) year delay was upheld in the *Haychuck* case, the action to recover wages was actually an addendum to the original complaint filed within a year of the incident giving rise to the cause of action. *Haychuck*, 127 F.Supp. at 49–50. It is additionally uncontested that after the funds were deducted, the plaintiff made no attempt to contact the defendant or register a complaint concerning the deduction prior to resorting to the judicial process.

As previously mentioned, prejudice to the defendant is of great importance in considering an asserted laches defense. In this action there is no question that the defendant has been prejudiced by the delay. The original withholding of $700.00 has now multiplied to (according to the applicable statute) an inordinate sum in excess of $600,000.00. Since 46 U.S.C. § 596 provides a penalty equal to two (2) days pay for every day of wrongful withholding, it is

obvious that the damage sought under the statute would have been minimal in comparison, had the suit been promptly initiated.

In addition to the excessive penalty to which the defendant is subject, there is evidence that the excessive delay contributed to the inability of the defendant to produce certain documents germane to this action.

Therefore, it is the decision of this court to find in favor of the defendant on all counts.